RECTOR et al. v. WARNER BROS. PICTURES, Inc., et al.

No. 7836.

United States District Court
S. D. California, Central Division.

Jan. 25, 1952.

Fred A. Weller, and Weller & Shibley, all of Los Angeles, Cal., Benjamin F. Schwartz and Strong & Schwartz, all of Beverly Hills, Cal., for plaintiffs.

Clock, Waestman, & Clock, Long Beach, Cal., and Russell Hardy, Washington, D. C., for defendant Cabart Theatres Corp.

Wright, Wright, Green & Wright, Loyd Wright, and Charles A. Loring, all of Los Angeles, Cal., for defendant United Artists Corp.

264

WESTOVER, District Judge.

On December 8, 1947, plaintiffs commenced this action for damages in the sum of $468,000.00 allegedly due because of a conspiracy by which the defendants restrained trade and commerce in the interstate distribution of motion picture films, contrary to Sections 1 and 2 of the Act of Congress commonly known as the "Sherman Act", 26 Stat. 209, 15 U.S.C.A. §§ 1 and 2. Each defendant was duly served and made answer to the complaint. Later an amended complaint and a supplemental complaint were filed by the plaintiffs.

On December 18, 1950, the plaintiffs entered into a certain document (denoted as "Covenant Not To Sue") with all of the defendants with the exception of United Artists Corporation and Cabart Theatres Corporation, and as a result of the execution of the "Covenant Not To Sue" the action was dismissed without prejudice as to Warner Brothers Pictures, Inc., Warner Brothers Pictures Distributing Corporation; Twentieth Century-Fox Film Corporation, Columbia Pictures Corporation; Universal Pictures Co., Inc., Universal Film Exchanges, Inc.; Paramount Pictures, Inc., RKO Radio Pictures, Inc.; Republic Productions, Inc., Eagle Lion Films, Inc.; Eagle Lion Studios, Inc., and PRC Productions, Inc.

Subsequent to the execution of the "Covenant Not To Sue" and the dismissals hereinabove mentioned, defendants United Artists Corporation and Cabart Theatres Corporation filed motions for leave to file supplemental answers and for summary judgment. The supplemental answers set out the execution of the so-called "Covenant Not To Sue" and alleged the covenant not to sue was in truth and in fact a release and that, as a consequence, release of part of the defendants was also a release of the moving defendants. The Court granted the motions to file supplemental answers and took under advisement the motions for summary judgment.

The two remaining defendants in this case contend that an action under the Sherman Act is an action in tort, and that a release of one of two or more joint tort-feasors operates as a release of all.

The Circuit Court of Appeals for the Eighth Circuit, in Clark Oil Co. v. Phillips Petroleum Co., 148 F.2d 580, says, at page 583: " * * *, an action to recover treble damages under the Clayton Act [38 Stat. 730] is based upon tort and the amount of compensatory damages which may be recovered can not be determined and is not fixed by statutory provisions, but the damages are unliquidated." Certiorari was denied, 326 U.S. 734, 66 S.Ct. 42, 90 L.Ed. 437.

In Farmers Co-Operative Oil Co. v. Socony-Vacuum Oil Co., Inc., D.C., 43 F. Supp. 735, at 738, the Court, speaking of actions brought under the anti-trust laws, states: "It is quite clear that the action * * * sounds in tort, and is both compensatory and deterrent in its character."

The Court said, in Imperial Film Exch. v. General Film Co., D.C., 244 F. 985, at 987: "The cause of action set forth in the complaint herein (or any cause of action properly brought under section 7 of the Sherman Act) is certainly for a personal wrong, and therefore an action for tort."

It is the Court's opinion that actions such as this are actions in tort and the rule that the release for consideration of one joint tort-feasor releases all joint feasors is applicable.

The Court of Appeals of the Ninth Circuit, in Pacific States Lumber Co. v. Bargar, 10 F.2d 335, at 337, says: "* * * This court is committed to the proposition that a release of one joint tort-feasor will release the others."

The question now before this Court is whether or not the document denoted "Covenant Not To Sue" is a covenant not to sue or a release, as there is a distinction between the two. If the document is a release, then the motions of defendants for summary judgment should be granted. However, if the document is a covenant not to sue, the motions should be denied.

It is immaterial what the document is designated, as it might be called a "Covenant Not To Sue" and still be a release or, conversely, it might be termed "Release" and by its provisions be only a

covenant not to sue. To determine the nature of the document in question it is necessary to look to the terms of the document itself.

█ In the Bargar case, Pacific States Lumber Co. v. Bargar, supra, the Ninth Circuit, quoting Smith v. Dixie Park Co., 128 Tenn. 112; 157 S.W. 900, indicates there are three requirements of a covenant not to sue, as follows: " 'Indicia of a covenant not to sue may be said to be: No intention on the part of the injured person to give a discharge of the cause of action, or any part thereof, but merely to treat in respect of not suing thereon (and this seems to be the prime differentiating attribute); full compensation for his injuries not received, but only partial satisfaction; and a reservation of the right to sue the other wrongdoer.' "

█ There is nothing in the so-called "Covenant Not To Sue" under consideration to indicate plaintiffs intended to give a discharge of the cause of action. Throughout the instrument are used the words "covenant not to sue", and the plaintiffs agreed to dismiss the action without prejudice as to the covenantees and agreed they would not institute any other action against the said covenantees. There is nothing in the instrument to indicate that a full and complete release was being given to the covenantees.

The instrument distinctly sets forth that the consideration for the execution of the "Covenant Not To Sue" did not represent full compensation for the damages allegedly suffered by the covenantors (as set forth in their original, amended and supplemental complaints) but was only partial compensation therefor. Also, the instrument provides specifically that plaintiffs did not in any manner or respect waive or relinquish any claim against any other person, firm, or corporation but specifically retained their causes of action against Cabart Theatres Corporation and United Artists Corporation.

It is evident from the foregoing that the so-called "Covenant Not To Sue" meets the requirements as set forth by the Circuit Court of this circuit in the Bargar case.

This Court is greatly impressed, however, with the argument of Justice Rutledge of the United States Court of Appeals for the District of Columbia, in McKenna v. Austin, 77 U.S.App.D.C. 228, 134 F.2d 659, at page 661, 148 A.L.R. 1253, who said:

"We agree with defendant that distinction between a 'release' and a 'covenant not to sue' is entirely artificial.

\* \* \* \* \* \*.

"\* \* \* Whether words of 'release' or of 'covenant' are used, the effect should be the same. Wide acceptance of the distinction, notwithstanding its want of substance, and the decisions that in applying it intention should control, point the way to reexamination of the rule and its foundations.

"The rule's results are incongruous. More often than otherwise they are unjust and unintended. Wrongdoers who do not make or share in making reparation are discharged, while one willing to right the wrong and no more guilty bears the whole loss. Compromise is stifled, first, by inviting all to wait for the others to settle and, second, because claimants cannot accept less than full indemnity from one when doing that discharges all. Many, not knowing this, accept less only to find later they have walked into a trap. The rule shortchanges the claimant or overcharges the person who settles, as the recurring volume and pattern of litigation show. \* \*

\* \* \* \* \* \*

"\* \* \* The crux of discharge therefore would be whether the amount paid for the release is in fact adequate or is so accepted for this purpose.

\* \* \* \* \* .\*

"The difficulty is in how it shall be determined whether full indemnity has been received. This will vary with circumstances. Facts and intentions, rather than presumptions from the mere fact of settlement, should control. \* \* \* Ordinarily the claimant will not secure complete indemnity from one or less than all, unless the others are judgment proof. Such a settlement usually would not be advantageous to the settling wrongdoer. The presumption of fact therefore generally

would be against full satisfaction and discharge. It would seem conclusive when rights against those not released are reserved explicitly or intention otherwise appears to keep these claims alive. Whether the settlement is made and accepted as full satisfaction or merely as the best obtainable compromise for the settler's liability is the crucial issue, and ordinarily one of fact. * * *

"In summary, there is no support for the rule of unitary discharge in the notion of entirety of obligation among joint tortfeasors. There is foundation in singleness of the injury, when complete indemnity has been made. We adhere to the rule in that circumstance. We repudiate it in others. Whether or not the settlement amounts to full reparation is to be determined, not merely from the fact of settlement, but as the facts of the particular situation dictate. Partial satisfaction taken in compromise and release of liability of one or some of the wrongdoers does not discharge the others. In the present case, the agreement with Independent expressly reserved the plaintiff's rights against the defendant. He therefore was not discharged. It is not material whether the instrument be considered a release or a covenant not to sue."

In the case at bar there is no question that the amount received was not considered by the parties to the agreement as settlement in full, as it was expressly set out in the agreement that the amount did not represent full compensation for the damages alleged to have been suffered but was only partial compensation therefor.

The Supreme Court of the State of California, in Lewis v. Johnson, 12 Cal.2d 558, at page 562, 86 P.2d 99, at page 101, relies upon the intentions of the parties, and in interpreting an instrument entitled as a covenant not to sue says: "The agreement was entitled 'Covenant Not to Sue and Covenant Not to Sue Further'; * * * it states that plaintiff 'promises and agrees that he will not sue and/or sue further' the said defendants, * * *; it concludes by stating that plaintiff does not waive any claims against others. This instrument was unmistakably intended to constitute a covenant not to sue."

There is no doubt that when the covenantors and covenantees executed the instrument before this Court it was their unmistakable intent to execute a covenant not to sue.

From the foregoing, it appears to this Court that the instrument in question is not a release but is a covenant not to sue and that the rule of a release of joint tortfeasors does not apply in this case.

The motions of defendants for summary judgment are denied.