219 F.2d 196
 EAGLE LION FILMS, Inc., Eagle Lion Studios, Inc., PRC Productions, Inc., and Chesapeake Industries, Inc., Plaintiffs-Appellants,
v.
LOEW'S Inc., RKO Theatres, Inc., RKO Film Booking Corporation and RKO Radio Pictures, Inc., Defendants-Appellees.
 No. 79.
 Docket 23183.
 United States Court of Appeals, Second Circuit.
 Argued January 11, 1955.
 Decided February 1, 1955.
 
 William L. McGovern, Washington, D. C. (Morris Gutt, New York City, and Robert L. Wright and Seymour Krieger, of Arnold, Fortas & Porter, Washington, D. C., on the brief), for plaintiffs-appellants.
 Edward C. Raftery, of O'Brien, Driscoll & Raftery, New York City, for defendants-appellees RKO Theatres, Inc., and RKO Film Booking Corp.
 S. Hazard Gillespie, Jr., of Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendant-appellee Loew's Inc.
 Thomas K. Fisher, New York City (Roy W. McDonald, of Donovan, Leisure, Newton & Irvine, New York City, on the brief), for defendant-appellee RKO Radio Pictures, Inc.
 Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.
 CLARK, Chief Judge.
 
 
 1
 This appeal from defendants' judgments in a private anti-trust action concerns principally the proper interpretation and effect to be given a contractual release among three of the original parties which has been held a bar to the present suit. D.C.S.D.N.Y., 121 F.Supp. 128. Plaintiffs contest the ruling of the district court that all of the defendants below were automatically released as joint tort-feasors along with one of the released parties. As they argue, a careful reading of the contract containing the release would disclose that the particular claims here involved were never released as to any one, so that the joint tort-feasor rule would have no application. Alternatively, they also challenge the application of the rule by the district court as strictly matter of law upon defendants' motions to dismiss and without reference to proffered affidavits concerning the intent of the contracting parties.
 
 
 2
 Plaintiffs' action, based on the Sherman Anti-Trust Act, 15 U.S.C. §§ 1-7, 15 note, originally sought both treble damages and injunctive relief from the monopolistic practices by motion picture distributors and exhibitors, as disclosed in United States v. Paramount Pictures, D.C.S.D.N.Y., 66 F.Supp. 323; Id., D.C., 70 F.Supp. 53, affirmed in part and reversed in part 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; decision on remand, D. C., 85 F.Supp. 881, affirmed Loew's, Inc., v. United States, 339 U.S. 974, 70 S.Ct. 1031, 94 L.Ed. 1380. In the interim before the action could come to trial, several events occurred which affected the standing of the parties. First, plaintiffs discontinued their own distribution activities; and so the distributor defendants were dismissed below, and the claim for equitable relief, which related only to distribution, was dropped. This dismissal is not challenged on this appeal except as to RKO Radio Pictures, Inc., whom plaintiffs do not concede to be a mere distributor. Second, one of the original plaintiffs, Eagle Lion Classics, Inc., a subsidiary of plaintiff Chesapeake Industries, Inc., was sold to United Artists Corp., one of the distributor defendants. Eagle Lion Classics was thus withdrawn from this lawsuit. More important, the sale gave rise to legal differences between the parties thereto, which were resolved by a formal Purchase Agreement of December 31, 1953, containing a release. It is this release which was held by the district court to have released all the remaining exhibitor defendants as joint tort-feasors with United Artists Corp.
 
 
 3
 Plaintiffs on this appeal vigorously deny that this anti-trust claim, assigned by Eagle Lion Classics to Chesapeake, was ever released even as to United Artists in the Purchase Agreement. They point to the fact that this claim predates the claims covered by the release, and that the alignment of parties in the release does not correspond to their alignment in this litigation.
 
 
 4
 The general rules governing the interpretation of contractual releases were aptly stated in Vines v. General Outdoor Advertising Co., 2 Cir., 171 F. 2d 487, 492, by Chief Judge Learned Hand: "In releases, as elsewhere, the intent of the parties is to be gathered from the instrument as a whole. Nevertheless, the courts of New York accept the common law doctrine that in a release words of general import, followed or preceded by words relating to specific claims, are, ceteris paribus, limited to the specific claims." It is noteworthy that the Purchase Agreement between United Artists and Chesapeake stated that it was to be governed by New York law, and that the Vines case, like this one, concerned actions under the antitrust laws.
 
 
 5
 Applying these standards to the release before us, we must agree with plaintiffs' reading thereof. True, there are many broad statements in the Purchase Agreement purporting to cover "all of said pending lawsuits" and to release "any and all claims, rights, liabilities, actions, debts, accounts, covenants, contracts, controversies, agreements, promises, damages and demands of whatsoever nature, known or unknown." But taken in context these statements are limited by other provisions. Besides the compromise of specific and unrelated claims, Chesapeake promised to discontinue or have discontinued motion picture claims in so far as they arose after April 28, 1951. From this a negative inference may be reasonably drawn concerning the present action, which alleges damages for an earlier period, from 1946 to 1950. More significantly still, the release provision runs from United and Eagle Lion Classics on the one hand to Chesapeake on the other, while in this anti-trust suit Chesapeake and Eagle Lion Classics are suing United Artists. We conclude, therefore, that this contract evidences no intent to release any one of the joint tort-feasors in this case. Thus we need not now decide whether, if the claim had been released, the exhibitor defendants should have been automatically permitted to benefit thereby, as held below.
 
 
 6
 Plaintiffs also complain of the dismissal of RKO Radio Pictures, Inc., as a distributor. This objection is grounded on the intimate relationship alleged to exist between RKO Radio and the rest of the RKO organization, parts of which are still involved here as exhibitors. But RKO Radio is consistently described in both these pleadings and in those in United States v. Paramount Pictures, supra, D.C.S.D.N.Y., 70 F.Supp. 53, as a distributor. And pursuant to a consent decree, RKO Radio, as a distributor, was divorced from the rest of RKO on November 8, 1948. The RKO organization is thus fundamentally different from the integrated Loew's business.
 
 
 7
 Plaintiffs cannot really deny any of this, and their characterization of RKO Radio as an exhibitor is lukewarm at best. Their real concern is because they fear they will not be able to introduce relevant evidence in the treble-damage suit against the exhibitor defendants if RKO Radio is no longer a party thereto. No specific grounds for this fear are alleged and we feel that it is unwarranted. First, when the RKO parent organization, Radio-Keith-Orpheum, was dismissed as a defendant pursuant to stipulation, plaintiffs' right to introduce relevant portions of the decree in United States v. Paramount Pictures, supra, was explicitly preserved. That stipulation by the parent organization would seem to be sufficient to make the presence of RKO Radio superfluous. Second, under the Federal Rules of Civil Procedure, the relevance of evidence is nowhere keyed to the particular persons before the court. And so far as some detailed items of proof may depend upon a preliminary showing of conspiracy, the fact that co-conspirators have not been named as parties does not at all prevent or aid the showing of their complicity.
 
 
 8
 The judgments of dismissal of defendants Loew's Inc., RKO Theatres, Inc., and RKO Film Booking Corp. are reversed and the action is remanded; the judgment of dismissal of RKO Radio Pictures, Inc., is affirmed.