**Elmer LYSFJORD and Walter R. Waldron, Plaintiffs,**

v.

**The FLINTKOTE COMPANY, Defendant.**

**Civ. No. 14350.**

United States District Court S. D. California, Central Division.

Nov. 10, 1955.

Alfred C. Ackerson, Los Angeles, Cal., for plaintiffs.

McCutchen, Black, Harnagel & Greene, by Harold A. Black and G. Richard Doty, Los Angeles, Cal., for defendant.

TOLIN, District Judge.

This action was commenced against many defendants. It appears on the Court docket as Elmer Lysfjord et al. versus L. D. Reeder Co. of San Diego et al. As all defendants except The Flintkote Company have been dismissed from this action, the Court refers to the case as captioned herein, The Flintkote Company being the only defendant now before the Court. Plaintiffs sued to recover damages sustained by them because of defendants' violation of the antitrust laws. Before trial, all defendants (except The Flintkote Company) collectively paid plaintiffs $20,000 as consideration for a covenant not to sue upon the claim asserted in the complaint.

The Flintkote Company did not obtain such a covenant and at the beginning of the trial it stipulated that the facts relating to said covenant not to sue would be withheld from the attention of the jury. Plaintiffs and The Flintkote Company stipulated that without prejudice to the right of either party to appeal or otherwise attack an adverse ruling, the Court would determine the effect upon the final judgment of the partial settlement of the case memorialized by the covenant not to sue.

The case was tried before a jury which rendered a general verdict for the plaintiffs. Damages were therein fixed at $50,000. The jury was not informed of the treble damage aspects of the controversy.

Section 4 of the Clayton Act requires the Court to treble the damages. The Court must determine whether the $20,-000 received by plaintiffs as considera-

tion for the covenant should be deducted from the damages as fixed by the verdict at $50,000 before such damages are trebled, or whether the Court shall order the damages trebled and deduct $20,000 from the $150,000 as the trebled damages.

The law reads as follows:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States * * * and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." [1]

The clear mandate of the statute directs that the collective liability of the tort obligors to the plaintiffs—that is, the total amount of the plaintiffs' claim—be treble the amount of the plaintiffs' actual damages. Of this fact, the parties were well aware prior to the time of the covenant not to sue. Thus, if it be said that the covenantees in this instrument admitted no liability, and were merely buying their peace, it should be added that they not only were buying protection from costs and possible liability for damages suffered by the plaintiffs, but from treble the amount of those damages. The price paid represented not merely insulation from liability for the eventually determined damages of $50,000, but from the plaintiffs' claim of three times that sum. Plaintiffs expressly reserved their claims against all but these covenantees. Although the treble damage provision is punitive in function, and the trebled portion of the judgment cannot be regarded as representing recompense for actual damages suffered by the plaintiffs, niceties of semantics cannot obscure the intent of the covenantees to pay the $20,-000 as consideration for relief from their *total* potential liability—that is, the damages plus the punitive addition.[2]

At early common law there could be but one judgment on a joint tort. Since the act of each tort-feasor acting in concert as in the instant case was the act of all, there was but one cause of action. This cause was "reduced to certainty" or merged in the judgment; and the judgment against one, even though unsatisfied, barred any later action against another. When a judgment was obtained against one wrongdoer in this class, the other was said to have been released. This was actually not a release but a relief from a lawsuit by operation of law.[3] The distinct principle that the plaintiff was entitled to but one compensation for his loss, was also developed in the same period. By application of this equitable principle, a satisfaction of the plaintiff's claim, even by a stranger to the action, prevented its further enforcement. The first rule has been generally repudiated in the United States. The second is confused by the concept of "joint tort-feasors", and further complicated by the use of releases.[4] By indirect application of those equitable principles recognizing a unity of interest among defendants, and allowing the plaintiff but one compensation for his loss, the rule arose in joint tort cases that *though a judgment against one alone* did not bar a judgment against the other, a satisfaction of the judgment by one party did in fact release the other from liability.[5] The use of the rule providing that the release of one releases all was so widened in scope, that by its dogmatic application, courts have deprived many plaintiffs of effective enforcement of meritorious claims where plaintiffs have received only partial satisfaction from one obligor.[6]

1. Title 15 U.S.C.A. § 15.

2. Courts may construe the intention of the parties in covenants not to sue. Westover, J., in the treble damage action, Rector v. Warner Bros. Pictures, D.C., 1952, 102 F.Supp. 263.

3. Prosser: 25 Cal.Law Rev. 413.

4. Ibid, note 3.

5. Restatement of Contracts, § 120, subsec. 3(b); Restatement of Judgments, (1942) § 95.

6. Hawber v. Raley, 1928, 92 Cal.App. 701, 268 P. 943; Ducey v. Patterson, 37 Colo. 216, 86 P. 109, 9 L.R.A.,N.S., 1066; 24 S.Calif.Law Rev. 466.

The injustice of the application of the rule of release became apparent to many courts. They began to hold valid those instruments of release which contained express reservation of rights against other tort obligors. Other courts avoided the unity of cause theory and simply construed the agreements as covenants not to sue.[7] Lawyers then began to use the express language of covenant not to sue or prosecute.

■■ By reasoning underlying this instrument, plaintiffs are entitled to a full redress of their injuries, or a satisfaction. They may receive a portion of this satisfaction and at the same time settle a portion of their rights with one defendant, reserving their rights against the other tort obligors. Their rights are limited, however, by the rule that they are entitled to only one satisfaction. Thus, the other tort obligors are liable solely for the balance of their damages. "No one can be allowed to recover more than one payment in full for the same claim by any device."[8]

■ Thus arises the problem of what constitutes satisfaction of the claim. The rule is said to be clear: The payment of money must have been intended to be made on account of the injuries.[9] It is held by some authorities that unless proved otherwise, any amount of money received by a plaintiff as a result of such an agreement should be considered a payment toward satisfaction.[10]

■ Intention of the parties may properly be gleaned by courts from the language of the instrument.[11]

The pertinent provisions of the instrument in this case are:

"Whereas, the convenantors are desirous, both jointly and severally, * * * of discontinuing their action against the covenantees herein, and each of them, and the covenantees herein are desirous of having said action discontinued against each of them; and it is the joint and several desire of the covenantors and covenantees that the covenantees herein be assured that covenantors' action filed by them will be discontinued against the covenantees and each of them, and that no other action will be instituted by the covenantors against the covenantees, either jointly or severally, under any of the anti-trust statutes or laws of the United States or of the State of California, or under the statutes or laws of any sovereignty whatsoever, on any of the matters set forth in the original or first amended complaint or on matters accruing to and including the day of execution of this covenant;

\*　\*　\*　\*　\*　\*

"That the sum of Twenty Thousand Dollars ($20,000.00) paid herein to the covenantors as consideration for the execution of this covenant not to sue does not represent to covenantors and shall not be construed as full compensation for the alleged damages claimed to have been suffered by the covenantors in their original complaint and in their first amended complaint, but is only partial compensation therefor, and it is understood and agreed that the covenantors do not in any manner or respect waive or relinquish any claim or claims against any other persons, firms, or corporations than those expressly named and designated herein, and that specifically covenantors retain their claims and causes of action against all other parties who are defendants in original and first amended complaints, including The Flintkote Company.

\*　\*　\*　\*　\*　\*

"That nothing herein set forth is intended to mean nor to be construed

7. Kincheloe v. Retail Credit Co., Inc., 1935, 4 Cal.2d 21, 46 P.2d 971; 1944, 148 A.L.R. 1270; 24 S.Cal.Law Rev. 466.

8. Williston on Contracts, § 388.

9. Restatement of Torts, § 885.

10. Restatement of Contracts, See § 120.

11. Rector v. Warner Bros. Pictures, D.C., 1952, 102 F.Supp. 263.

**676**

as any admission of liability on the part of any of the çovenantees with respect to any of the matters alleged in the complaint and the first amended complaint. * * * "

Although the express mention of damages in the instrument might possibly be construed as a matter of form placed therein to preclude any implication of a release, the construction of the instrument as a whole shows an intent of the parties that the consideration be applied as partial compensation to, or on account of, potential adjudicated damages.

■ As no evidence was offered, and no instruction given the jury informing them of the previous partial settlement, and the jury was limited to determination of the amount of actual damages, the verdict of $50,000 was determinative of the actual damages suffered by the plaintiffs. Treble damage actions are based on tort,[12] and ordinarily under tort rules a payment of this sum would constitute full satisfaction of the plaintiffs' claim. Thus, pursuant to the covenant not to sue, the partial compensation of $20,000 would be deducted immediately from the $50,000 verdict.[13] However, the treble damage provision is a remedy created by federal statute.[14] The remedies of the plaintiffs, and the liabilities of the tort obligor are determined under provisions of the Act. Section 4 of the Clayton Act (practically identical with Section 7 of the Sherman Act) provides that the plaintiff " * * * shall recover threefold the damages by him sustained * * *."[15] This provision allows actual damages to be determined under tort law by the trier of fact, but to this sum it super-imposes the additional amount, giving the plaintiffs in this case the total claim of $150,000. This is the amount of their satisfaction. It is true that the trebled portion of the judgment is punitive in nature and does not represent actual damages. Yet to hold that the plain-

tiffs are entitled to one dollar less than the full trebled damages of $150,000 would be a direct repudiation, or at least a contravention of the provisions of the statute under which this very cause was brought. The covenant not to sue may not be employed to shatter the clear intent of the statute. If the $20,000 sum were subtracted before trebling the verdict, the mature judgment, plus the partial settlement, could amount to an aggregate of no more than $110,000. This is only a fraction of the "one satisfaction" to which the plaintiffs are entitled under the Act.

The $20,000 sum must be credited to the defendant against the full claim of $150,000. To hold otherwise would perpetrate another instance in which a plaintiff has been deprived of a meritorious claim because he has received only partial satisfaction from other obligors.

---

12. Rector v. Warner Bros. Pictures, D. C., 1952, 102 F.Supp. 263; Ibid notes 2 and 12.

13. McWhirter v. Otis Elevator Co., D.C., 1941, 40 F.Supp. 11.

