351 F.2d 925
 TWENTIETH CENTURY-FOX FILM CORPORATION, Buena Vista Distribution Co., Inc., Metro-Goldwyn-Mayer, Inc., and Paramount Film Distributing Corporation, Appellants,
v.
WINCHESTER DRIVE-IN THEATRE, INC., Syufy Enterprises, Inc., Rancho Drive-In Theatre, Inc., and Bell Drive-In Theatre, Inc., Appellees.
BLUMENFELD ENTERPRISES, INC., Appellant,
v.
WINCHESTER DRIVE-IN THEATRE, INC., Syufy Enterprises, Inc., Rancho Drive-In Theatre, Inc., and Bell Drive-In Theatre, Inc., Appellees.
 No. 19400.
 No. 19402.
 United States Court of Appeals Ninth Circuit.
 October 22, 1965.
 
 Noble K. Gregory, Allan N. Littman, William I. Edlund, Pillsbury, Madison & Sutro, San Francisco, Cal., for appellants 20th Century Fox Film Corp., and others.
 Robert D. Raven, Douglas C. White, Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., for appellant Blumenfeld Enterprises, Inc.
 Joseph L. Alioto, G. Joseph Bertain, Jr., San Francisco, Cal., for appellees.
 Before BARNES, BASTIAN and MERRILL, Circuit Judges.
 BARNES, Circuit Judge:
 
 
 1
 This appeal comes before us under cirtification of the district court that a controlling question of law is involved as to which there is a substantial ground for difference of opinion. As required by statute (28 U.S.C. § 1292(b)), we granted permission to appeal on the question contained in the certificate issued by the district court. That single controlling question, as framed by the district court, is "what rule the federal courts should apply to govern the effect of a general release in a federal antitrust case." He concluded there was no clear answer, and we agree.
 
 
 2
 We note at the outset that our attention is addressed to the single issue certified by the district court and to no other. We are required to construe the extraordinary relief provided by 28 U.S.C. § 1292(b) in its narrowest sense if we are not to thwart the judicial policy against interlocutory appeals and their resultant dilatory consequences. Thus, only two questions are presented on this appeal for our determination:
 
 
 3
 1. Does federal or state law govern the effect of releases in federal antitrust actions?
 
 
 4
 2. If federal law governs, does a general release of one joint tort-feasor release all joint tort-feasors?
 
 
 5
 As noted by the certificate issued by the district court, the controversy giving rise to this appeal involves an alleged violation of the antitrust laws. On November 4, 1958, prior to the date the present action was filed, the Rancho Drive-In Theatre Corporation, a motion picture exhibitor in Richmond, California, filed an antitrust action against Fox West Coast Theatre Corporation and United Artists Theatre Circuit, Incorporated (hereinafter sometimes referred to as the Rancho case). On May 11, 1959, plaintiff in the Rancho case entered into an "Agreement for Dismissal of Action and General Release" with Fox West Coast Theatres Corporation. The signatories to the release provided that all those parties whom the signatories were authorized by law to represent were also to be bound by the terms of the release.[1] The instrument also expressly reserved to the releasors any claims which they might have against the other defendant in the Rancho action, United Artists Theatre Circuit, Incorporated.[2] Pursuant to stipulation, the action was dismissed as to the defendant Fox West Coast only on June 8, 1959.
 
 
 6
 Thereafter, on August 13, 1959, another general release was executed by and on behalf of the same persons. This "General Release," is reproduced in part in the margin.[3] It made no mention of the pending action against United Artists. That action, however, was subsequently dismissed on February 26, 1963.
 
 
 7
 On December 28, 1960, the present action was filed by certain parties whose interests had been represented by the releasors in the Rancho action, as well as by two corporations, Winchester Drive-In Theatre, Inc. and Syufy Enterprises, Inc., neither of which had an interest in the Rancho case prior to August 13, 1959.
 
 
 8
 On March 3, 1963, the distributor defendants as well as the exhibitor defendant other than Fox West Coast and United Artists filed their answers raising a defense based upon the release of August 13, 1959. A motion for partial summary judgment on the basis of the general release defense was denied without prejudice on the ground that an issue of fact existed as to whether the August 13, 1959 release encompassed the claims in the instant action. Subsequent thereto, attorneys for plaintiffs and Fox West Coast stipulated in writing "that plaintiffs are seeking no damages from defendant FOX WEST COAST THEATRES CORPORATION for the period prior to August 13, 1959 * * *." Thereafter, a second "Motion for Partial Summary Judgment" was denied by the district court. 232 F. Supp. 556. (N.D.Cal.1964). The court concluded that federal rather than state law governed the effect of a general release in an antitrust action. The court then adopted as the federal rule that a general release does not discharge the other joint tort-feasors unless it expressly provides for their discharge. The propriety of that ruling is the issue that the district court has certified as a controlling question of law for our consideration.
 
 I. State versus federal law.
 
 9
 Attorneys of all parties concede, as found by the district court, that a conflict exists as to whether state or federal law governs the effect of a release in a federal antitrust case. The uncertainty of the current state of the law on this question was noted by the third circuit in Dura Electric Lamp Co. v. Westinghouse Electric Corp., 249 F.2d 5 (3rd Cir. 1957). Some federal trial courts have held that state law applies. See, e. g., Solar Electric Corp. v. General Electric Co., 156 F.Supp. 51 (W.D.Pa. 1957). Others have unequivocally stated that federal law applies. Taxin v. Food Fair Stores, Inc., 197 F.Supp. 827 (E.D.Pa. 1961); Dale Hilton, Inc. v. Triangle Publications, Inc., 198 F.Supp. 638 (S.D. N.Y. 1961). No abstract notions arising from a so-called substance-procedure dichotomy can be relied upon to resolve this conflict in result. Cf. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Whether state or federal law should govern the question posed by this appeal must be made dependent upon considerations of public policy which transcend any static theories of law.
 
 
 10
 In the present matter we are concerned with rights created under federal law. We are concerned with a federal statute which seeks to regulate business conduct that affects commerce crossing state lines. Allegations of proscribed conduct under the antitrust laws most frequently involve charges of illegal activities transcending state, regional, and even national boundary lines.
 
 
 11
 Although the Supreme Court has not treated the problem of the effect of a release in a federal antitrust case, we find its position in Dice v. Akron, C. & Y. R. Co., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952) clearly in support of the proposition that the construction of a release in a situation of federally-created rights is to be governed by federal law. In that case, the question of the validity of a release granted to a carrier by an injured employee in an action under the Federal Employers' Liability Act was held a matter of federal rather than state law. The Court stated:
 
 
 12
 "Manifestly the federal rights affording relief to injured railroad employees under a federally declared standard could be defeated if states were permitted to have the final say as to what defenses could and could not be properly interposed to suits under the Act. Moreover, only if federal law controls can the federal Act be given that uniform application throughout the country essential to effectuate its purposes." (342 U.S. at 361, 72 S.Ct. at 314.)
 
 
 13
 We find the Supreme Court's position in Dice compelling reason to treat the question of the effect of a general release under the antitrust laws as a matter of federal concern. State law cannot be permitted to impede the effectuation of the national objectives expressed in the statutory scheme of the antitrust laws. We affirm the lower court's determination that a federal rule should apply.[4]
 
 II. Effect of general releases under federal law.
 
 14
 The determination that federal law governs the effect of a general release in an antitrust case does not, unfortunately, result in a speedy resolution of the controlling legal question which confronts us on this appeal. We must face the task of deciding what that federal law is.
 
 
 15
 From our reading of the briefs before us as well as the case law that has either directly or tangentially treated the issue presently at bar, we find three possible rules of law which might conceivably be applied to the question of what effect should be given to a general release of one of several joint tort-feasors. These three positions can be stated as follows:
 
 
 16
 (1) A release given one joint tort-feasor necessarily releases all others even though it expressly reserves rights against them. This is generally referred to as the common law rule.
 
 
 17
 (2) A release of one tort-feasor does not release other joint tort-feasors unless the release expressly so provides.[5]
 
 
 18
 (3) A release of one tort-feasor releases all others jointly liable unless the release expressly reserves rights against joint tort-feasors.
 
 
 19
 The district court, in making its choice of which rule of law to follow, determined that the federal courts which had adhered either to rule "1" or rule "3" had done so adhering to the status of the law as expressed in the Restatement of Torts. Rule "1" embodies the provision of the old common law rule, and Rule "3" voices the position of section 885(1) of the Restatement. The district court concluded that neither of these rules was suitable in the setting of a private treble-damage action under the anti-trust laws. For this reason, the district court took it upon itself to fashion its own body of appropriate federal law. It adopted and applied the position spelled out in Rule "2" above, permitting a release of joint tort-feasors only where expressly provided in the release instrument. We think that in fashioning this body of law the district court has exceeded the bounds of judicial authority and has entered the province of legislative concern. We feel that in the absence of legislative invitation to the courts to fashion a body of federal law and in the absence of a state of law so ambiguous or conflicting that the courts are compelled to fashion a body of law, it is unwise for a court to make legislative judgments usually left to the public's elected representatives.
 
 
 20
 The selection process exercised by the district court in the present case resulted in the adoption of a rule which is embodied in section 4 of the proposed Uniform Contribution Among Tortfeasors Act. This statutory provision provides as follows:
 
 
 21
 "A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid."
 
 
 22
 We will not pass judgment on the desirability of this proposed legislation. Such a critical analysis is in our view, not a proper activity for a judicial body. Rather, we merely note in passing that this proposed legislation has not as yet been adopted by a majority of state jurisdictions,[6] and has not received congressional approval. Given the fact that Congress has not enacted the UCATA rule, and given what we deem to be the clear indications of what the status of the federal law is today on the question of the effect of a general release on joint tortfeasors, we find the district court's use of the proposed UCATA rule unsupportable.
 
 
 23
 It is important to note that the impression appellees wish to convey of the obsolescence of the position urged by appellants is inaccurate. At no time have appellants urged that we revert to the old common law rule by releasing joint tort-feasors regardless of contrary expressions of intent in the terms of the general release. The authorities have recognized the outmoded nature of this rule, and their recognition has been expressly embodied in the most recent Restatement of Torts (§ 885). Thus the position expressed by the Restatement and the vast majority of the recent case law is that a release of one tort-feasor need not release all others jointly liable if the release expressly reserves rights against joint tort-feasors.
 
 
 24
 The case most nearly on all fours with the present is Dura Electric Lamp Co. v. Westinghouse Electric Corp. 249 F.2d 5 (3d Cir.1957). In that antitrust action, plaintiffs had given one defendant a general release without reserving any rights against others. Dura's president swore by affidavit that it was never his intention to release parties not signatory to the release. The court, however, held that appellant was bound by the legal effect of the words used, and that the release of one coconspirator had uniformly been treated as releasing all coconspirators unless the release embodied a contrary expression of intent. Numerous other trial courts have reinforced the proposition that the present Restatement position is an accurate expression of the current status of the law of general releases. See, e. g., Combined Bronx Amusements v. Warner Bros. Pictures, 132 F.Supp. 921 (S.D.N.Y. 1955); Rector v. Warner Bros. Pictures, 102 F.Supp. 263 (S.D.Cal.1952); Michael Rose Productions, Inc. v. Loew's Inc., 141 F.Supp. 257 (S.D.N.Y.1956).
 
 
 25
 Nor do we find the Restatement position to be so unsupportable in reason as appellees would have us believe. The Restatement rule does not prevent an injured party from reserving rights against one or more joint tort-feasors while releasing others. It merely requires that he announce his intent, and express that reservation in the release agreement. Such a rule has the substantial advantages of eliminating disputes as to the intended scope of the release. It discourages chicanery in the negotiation of the release. We find it difficult to believe that the incorporation in a release of a clear statement of its scope and intent will place too heavy a burden on counsel charged with the responsibility of drafting the instrument.
 
 
 26
 Appellees' citation of cases in support of its position blurs the precise issue before us. The cases are advanced for the proposition that the releasor's intent is the determinative factor in establishing the effect of a general release on the liability of joint tort-feasors. Eagle Lion Films v. Loew's Inc., 219 F.2d 196 (2d Cir. 1955), aff'd 358 U.S. 100, 79 S.Ct. 218, 3 L.Ed.2d 147 (1958); Vines v. General Outdoor Advertising Co., 171 F.2d 487 (2d Cir. 1948). These cases, however, did not deal with the question of what parties were released by a general release of one joint tort-feasor. They were, rather, principally concerned with interpretation of an ambiguous general release to determine what claims were and what claims were not included within the scope of the release. In such a situation it is of course proper and necessary to ascertain the intent of the releasor. The present case does not involve that problem. As expressly found by the district court, "the August release includes in its coverage the claims in the Winchester case." (Clerk's Tr. 467G.) The nature of the claims covered by the general release is thus not in issue before us. We are concerned only with the effect of the general release on other joint tort-feasors, the question precisely treated in the Dura case, supra, and in section 885 of the Restatement of Torts.
 
 
 27
 Appellees further distort the issue by citing as authority for their position cases in which an express reservation of rights against other joint tort-feasors was evident in the release instrument. Appellees juxtapose the holdings in these cases with the old Restatement rule, and urge that we cannot blindly adhere to the traditional position. In so urging, however, appellees ignore the fact that appellants do not adhere to the old common law rule that a general release automatically absolves all joint tort-feasors regardless of a contrary expression of intent. Appellants rather advance what apparently is the modern majority rule that joint tort-feasors are released unless an express contrary intention is demonstrated. Thus, as noted by appellees, the Supreme Court opinion in Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964), does repudiate the old rule, but, in doing so, it cites with approval the current Restatement position, a factor completely ignored by appellees in their reliance on the Aro case. The Court stated:
 
 
 28
 "It is true that a contributory infringer is a species of joint tort-feasor * * * It is also true that under the old common-law rule, a release given to one joint tort-feasor necessarily released another, even though it expressly stated that it would have no such effect. See Prosser, Torts (2d ed. 1955), at 243-244. Under this rule Aro's agrument on this point would prevail, since the agreement did release Ford's purchasers for their infringing use of the top-structures before the agreement date, and that was the use to which Aro contributed. See Schiff v. Hammond Clock Co., 69 F. 2d 742, 746 (7th Cir. 1934), reversed for dismissal as moot, 293 U.S. 529, 55 S.Ct. 146, 79 L.Ed. 639 (1934). But the rule is not applicable. Even in the area of nonpatent torts, it has been repudiated by statute or decision in many if not most States, see Prosser, supra, at 245, and by the overwhelming weight of scholarly authority. E. g., American Law Institute, Restatement of Torts (1939), § 885(1) and Comments b-d." (377 U.S. at 500-501, 84 S.Ct. at 1539-1540).
 
 
 29
 In light of the status of the law today, therefore, we are compelled to reject the district court's attempt to employ legislation not yet enacted by the Congress. We hold, consistent with the majority of case law, and the Restatement position, that appellees could have reserved rights against other joint tort-feasors even while releasing Fox West Coast, but that appellees, with the advice of antitrust counsel, failed to do so. The June release did expressly reserve rights against United Artists, but the August release incorporated no express reservations of any kind. We can conclude that this was not happenstance. In the absence of such an express reservation, all joint tort-feasors are released of liability for the claims for which Fox West Coast was released on August 13, 1959.
 
 
 30
 The order of the district court is reversed and the matter is remanded for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 "THIS INSTRUMENT, wherein RAYMOND SYUFY, WILLIAM SYUFY, NORTHERN THEATRES & REALTY CORPORATION, SYUFY MOTOR MOVIES, INC., RANCHO DRIVE-IN THEATRE CORPORATION, GENEVA DRIVE-IN THEATRE, INC., RENO DRIVE-IN THEATRE, INC., BELL DRIVE-IN THEATRE, INC. AND BLUEBELL DRIVE-IN THEATRE, INC., and every person, firm, estate or corporation which the foregoing, or some or any of them, acting alone or together, are authorized by law to bind, and each of them jointly and severally, are Releasors, and FOX WEST COAST THEATRES CORPORATION, a Delaware corporation, its past and present parents, subsidiaries and affiliates, predecessors, successors, assigns, directors, officers, employees and agents, and the directors, officers, employees and agents of said past and present parents, subsidiaries, affiliates, predecessors, successors and assigns, are Releasees."
 
 
 [2]
 "Without in any way limiting the generality of the foregoing general release, it is understood that the same specifically includes any and all claims which have been asserted and which might be asserted in that certain action entitled `Rancho Drive In Theatre Corp., Plaintiff, v. Fox West Coast Theatre Corp. and United Artists Theatre Circuit, Inc., Defendants', pending in the United States District Court for the Northern District of California, Southern Division, No. 37792 in the files of said court; provided, however, that this release shall not cover any claims of Releasors against United Artists Theatre Circuit, Inc., a defendant in said action."
 
 
 [3]
 "For and in consideration of the sum of $3,200.00 paid by Releasees to Raymond Syufy (who is hereby authorized by each Releasor to receive said sum on his, her, and its behalf) Releasors, and each of them release and discharge Releasees, and each of them, from any and all claims, demands or causes of action, known or unknown, against Releasees, or any of them, which Releasors, or any of them, now own or hold, have at any time heretofore owned or held, or may at any time hereafter own or hold, by reason of any matter, cause or thing whatsoever done, omitted or suffered to be done prior to the date of this instrument."
 
 
 [4]
 Cf., note, 63 Mich.L.Rev. 1282, 1284 (1965)
 
 
 [5]
 Cf., California Code of Civ.Proc. § 877
 
 
 [6]
 The 1939 version of the Uniform Contribution Among Tortfeasors Act which the district court referred to in its opinion was adopted with various modifications by Arkansas, Delaware, Hawaii, Maryland, New Mexico, Pennsylvania, Rhode Island and South Dakota. (9 Uniform Laws Annotated 230, 242 (1957).)
 In 1955 the National Conference of Commissioners on Uniform State Laws promulgated a new version of the UCATA in order to reconcile variations that developed in the statutes of the states which had adopted the 1939 act. Section 4 of the 1955 version provides that the release of one joint tortfeasor will have the same effect as that provided for in the 1939 version. The 1955 version has been adopted in Massachusetts and North Dakota. (9 Uniform Laws Annotated, Supp. 105 (1964).)
 Other states have acts providing for contribution among joint tortfeasors not patterned on the Uniform Act. Among those which include release provisions similar to the UCATA are the acts of California, Michigan and Florida.