Lawrence H. AYERS, Plaintiff,

v.

PASTIME AMUSEMENT COMPANY and
Consolidated Theatres, Inc.,
Defendants.

Lawrence H. AYERS and Ruth T. Ayers,
Plaintiffs,

v.

PASTIME AMUSEMENT COMPANY and
Consolidated Theatres, Inc.,
Defendants.

Civ. A. Nos. 6481, 6482.

United States District Court
D. South Carolina,
Charleston Division.

Oct. 6, 1966.

See also D.C., 240 F.Supp. 811.

Edward K. Pritchard, Charleston, S.
C., W. Bradley Ryan, Boston, Mass., for
plaintiffs.

Arthur G. Howe, W. Turner Logan,
Charleston, S. C., for defendant Pastime
Amusement Co.

R. M. Hollings, Charleston, S. C., for
defendant Consolidated Theatres Co.

## ORDER

SIMONS, District Judge.

The within captioned actions were commenced in this court on January 13, 1958 by the filing of complaints against the two named defendant exhibitors of motion pictures and also against the personal defendant, Albert Sottile, who was the managing officer and director of the corporate defendant, Pastime Amusement

Company. Subsequent to the commencement of the action Mr. Sottile has died and his personal representative was not substituted as a party defendant. Also defendants in the original suit were the following eight producers and distributors of motion picture films:

Paramount Film Distributing Corporation

Loew's Incorporated (now Metro-Goldwyn-Mayer, Inc.)

Twentieth Centry Fox Film Corporation

Warner Bros. Pictures Distributing Corporation

R.K.O. Teleradio Pictures, Inc., (now R.K.O. General, Inc.)

United Artists Corporation

Universal Film Exchanges, Inc.

Columbia Pictures Corporation

The causes of action are tort suits founded upon an alleged conspiracy among the defendant exhibitors and distributors in violation of the Sherman Anti-trust Act, Title 15, U.S.C., Sections 1, 2, and 6, and the Clayton Antitrust Act, Title 15, U.S.C., Sections 13, 15, 16, and 22.

Since the commencement of the actions almost nine years ago, the original parties have engaged in exhaustive discovery. Many depositions have been taken, and hundreds of exhibits introduced at the taking of said depositions. These cases have also been before the court on numerous motions.

During the latter portion of 1963 and the early part of 1964 plaintiffs and the eight defendant distributors entered into settlement negotiations which resulted in a compromise settlement of these causes of action against said distributors, upon the payment by them to plaintiffs of the sum of $42,500 and the execution of a "Covenant Not to Sue" dated March 11, 1964 by plaintiffs as covenantors in favor of the distributors and Paramount Pictures Corporation, Warner Bros. Picture Distributing Corporation, and Universal Pictures Corporation (the last three apparently being subsidiary corporations of some of the distributor corporations) as covenantees. Pursuant and subsequent to the execution of the "Covenant Not To Sue" on March 11, 1964 the defendant distributors paid this sum of $42,500 to plaintiff's counsel on April 6, 1964, in escrow until orders of dismissal were obtained from the court dismissing the eight distributors from the action. Upon motion of plaintiffs' counsel and by order of this court dated April 9, 1964, the within actions were dismissed against the defendant distributors "and as to those defendants only, with prejudice and without costs".

Thereafter, the sole remaining defendants, Pastime Amusement Company and Consolidated Theatres, Inc., moved for summary judgments upon the ground that plaintiffs' causes of action were unitary and indivisible tort actions, and that the purported covenant not to sue was in legal effect a general release "so that the execution of the settlement documents, when coupled with the dismissal of the actions with prejudice as to the defendant distributors leads to a like dismissal with prejudice" as to the two defendant exhibitors.

Both parties also moved for leave to file third-party complaints against and to bring back into these causes of action the eight defendant distributors who had heretofore purchased their peace from plaintiffs upon the ground that there was no wrongdoing on the part of the two defendant exhibitors, and that any verdicts or judgments which plaintiffs may recover against Pastime and Consolidated would necessarily be based exclusively upon the actions of the third-party defendants (the eight defendant distributors) who conspired among themselves substantially in the manner alleged in the original complaint, and that any acts done by the two defendant exhibitors were done innocently and with no intent to engage in, or with any knowledge of, the alleged wrongful conspiracy among the proposed third-party defendant distributors.

These motions were heard by the court on July 27, 1966, at which time counsel

for plaintiffs and Pastime and Consolidated filed written briefs setting forth their positions and the court heard extensive oral arguments. Subsequent to the hearing counsel for the parties have also filed written reply briefs.

At the hearing the court denied defendants' motions to file third-party complaints in these causes of action against the eight defendant distributors. Thus, the sole motions now before the court are those of defendants for summary judgment.

In determining these motions the controlling questions are as follows: (1) Do principles of federal or state law apply to the issues? (2) Is the instrument dated March 11, 1964, executed by plaintiffs as covenantors in favor of the defendant distributors and others as covenantees, a covenant not to sue, or a release? (3) If such instrument is found by the court to be a release, does such release of some of the alleged joint tortfeasors constitute a release of all joint tort-feasors, so that these actions may not now be maintained against the two defendant exhibitors?

Factually there is no dispute of any substantial facts. The court has considered the contents of the purported covenant and the written negotiations between counsel for plaintiffs and the distributors which culminated in the settlement of these cases on the basis of the "covenant not to sue". The court finds that it was the intention of the parties to the instrument that it constitute a covenant not to sue and that plaintiffs did not accept the $42,500 settlement as payment in full of all of its alleged injuries and damages resulting from the wrongful conduct of all the parties defendant to the original actions. Furthermore, the instrument involved was entitled "Covenant Not To Sue" and in the body of the instrument itself, plaintiffs jointly and severally, and for their executors, administrators, successors and assigns covenanted not to sue the defendant distributors, their predecessors, affiliates, subsidiaries, etc., upon any and all causes of action "whatsoever from the beginning of the world to the date of these presents."

In the instrument plaintiffs also specifically reserved all causes of action they may have against all other persons, firms or corporations, other than the covenantees specifically named therein.[1]

The question of whether federal or state law should apply in determining whether the instrument here is a covenant not to sue or a release is moot inasmuch as the South Carolina Supreme Court has never apparently had occasion to consider such question. Fundamentally, however, the South Carolina rule is in keeping with the old common law principle that the release of one joint tort-feasor discharges all other joint tort-feasors. See Pendleton v. Columbia Railway, 133 S.C. 326, 131 S.E. 265, and National Bank of Savannah v. Southern Railway, Carolina Division, 107 S.C. 28, 91 S.E. 972. Although the South Carolina Supreme Court has never had occasion to express itself concerning the validity of a covenant not to sue, such instruments have been recognized as valid in this state since the opinion of my late lamented colleague District Judge C. C. Wyche in McWhirter v. Otis Elevator Co., 40 F.Supp. 11 (W.D.S.C.1941), in which he held: "A settlement with and a release of one tort feasor in which the right is expressly reserved against the other tort feasors is not technically a release *but a covenant not to sue*". (Emphasis added.)

1. The reservation contained in the last paragraph of the Covenant Not To Sue dated March 11, 1964 is as follows:
"This Covenant Not To Sue and all other Covenants, representations, and warranties by the Covenantors, and each of them, herein contained, shall not apply to any claim, cause of action, right of action, or claim for relief which Covenantors, or either of them, may ever have had or which they, or either of them, may now have against any persons, firms or corporations other than the Covenantees, all of which claims, causes of actions, rights of action, or claims for relief, are hereby expressly reserved by and to the Covenantors."

The court recognizes that there is a divergence of opinion among some of the state and federal courts as to whether a release of one joint tort-feasor, with a reservation of rights against other joint tort-feasors accompanied by a dismissal with prejudice of the action against the released joint tort-feasors by operation of law releases all joint tort-feasors. The cases which have been brought to the court's attention supporting the principle that the release of one joint tort-feasor under such circumstances releases all joint tort-feasors are Simpson v. Plyler, 258 N.C. 390, 128 S.E.2d 843, and the numerous cases cited therein; Byrd v. Crowder, 166 Tenn. 215, 60 S.W.2d 171; Eberle v. Sinclair Prairie Oil Co., 120 F. 2d 746, (10th Cir. 1941), and Elliott v. Paramount Film Distributing Corporation, 27 F.R.D. 495 (E.D.Pa.1961). It is noted that in *Eberle* the court was applying state not federal law.

 After a careful consideration of the pertinent authorities the court is convinced that principles of federal and not state law must govern the issues here since plaintiffs' causes of action arise and are predicated upon federal antitrust statutes.

Although the precise issue before the court has apparently never been directly considered by the United States Supreme Court or the Fourth Circuit Court of Appeals, closely parallel situations have been considered by the United States Supreme Court. In Dice v. Akron, Canton & Youngstown R. R. Co., 342 U.S. 359, 72 S. Ct. 312, 96 L.Ed. 398 (1952), the Court had before it the question of whether in a state court action under the Federal Employers' Liability Act the validity of a release granted to the railroad by the injured employee was to be determined by federal or state law. The Court, at page 361, 72 S.Ct. at page 314, stated:

> "*First.* We agree with the Court of Appeals of Summit County, Ohio, and the dissenting judge in the Ohio Supreme Court and hold that validity of releases under the Federal Employers' Liability Act raises a federal question

to be determined by federal rather than state law. Congress in § 1 of the Act granted petitioner a right to recover against his employer for damages negligently inflicted. State laws are not controlling in determining what the incidents of this federal right shall be. Manifestly the federal rights affording relief to injured railroad employees under a federally declared standard could be defeated if states were permitted to have the final say as to what defenses could and could not be properly interposed to suits under the Act. Moreover, only if federal law controls can the federal Act be given that uniform application throughout the country essential to effectuate its purposes." Citations omitted.)

In Garrett v. Moore-McCormack Co., Inc., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942), the Court held that in a suit by a seaman in a state court proceeding for damages under Section 33 of the Merchant Marine Act and for maintenance and cure the rights of the parties are measured by the federal statute and Admiralty principles of law, rather than by state court principles. Other persuasive federal court decisions enunciate the principle that federal rather than state law controls suits involving alleged violations of the federal antitrust laws. In Twentieth Century-Fox Film Corp. v. Winchester Drive-In Theatre, 351 F.2d 925 (9th Cir. 1965), the court, at page 928, stated: "State law cannot be permitted to impede the effectuation of the national objectives expressed in the statutory schemes of the antitrust laws. We affirm the lower court's determination that a federal rule should apply." The court in that case held that a release which "contained no express reservations of any kind" released all joint tort-feasors in the cause of action. The Ninth Circuit indicated, however, that its decision would have been different if there had been an express reservation of rights against joint tort-feasors not included in the release. See also Dale Hilton, Inc. v. Triangle Publications, Inc., 198 F.Supp. 638 (E.D. Pa.1961); Stella v. Kaiser, 221 F.2d 115

(2d Cir. 1955), cert. den. 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745.

 In keeping with the federal law and the better reasoned decisions the court concludes that the instrument executed by plaintiffs in favor of the defendant distributors was in fact a covenant not to sue, and was not a release; therefore, it did not by operation of law release the two defendant exhibitors herein. See Clapper v. Original Tractor Cab Co., 165 F.Supp. 565 (S.D.Ind.1958); Lysfjord v. Flintkote Co., 135 F.Supp. 672 (S.D.Cal.1955); Rector v. Warner Bros. Pictures, 102 F.Supp. 263 (S.D.Cal. 1952); McKenna v. Austin, 134 F.2d 659 (D.C.Ct. of App.1943). The intention of the parties in executing the instrument is of paramount importance in determining whether an instrument is a covenant not to sue or a release, and where there is any reasonable basis for a court to determine that the document is a covenant rather than a release it will do so. Dale Hilton, Inc. v. Triangle Publications, Inc., supra; Lysfjord v. Flintkote Co., supra; Restatement, Contracts, Section 120.

 Even if the document herein be found to be a general release rather than a covenant not to sue, it would not operate to discharge defendants Pastime and Consolidated since in the instrument plaintiffs expressly reserved their rights and causes of action against all except the covenantees therein. The most recent pronouncement of the American Law Institute in the Restatement, Torts, § 885 (1939), expresses the modern and better reasoned view as follows:

"(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document." [2]

The United States Supreme Court in its recent decision of Aro Mfg. Co. v. Convertible Top Replacement Co., Inc., 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964), added its concurrence to this view when it stated at page 501:

"It is also true that under the old common-law rule, a release given to one joint-tortfeasor necessarily released another, even though it expressly stated that it would have no such effect. See Prosser, Torts (2d ed. 1955), at 243–244. Under this rule Aro's argument on this point would prevail, since the agreement did release Ford's purchasers for their infringing use of the top-structures before the agreement date, and that was the use to which Aro contributed. See Schiff v. Hammond Clock Co., 69 F.2d 742, 746 (C.A. 7th Cir. 1934), reversed for dismissal as moot, 293 U.S. 529, 55 S.Ct. 146, 79 L.Ed. 639. But the rule is not applicable. Even in the area of nonpatent torts, it has been repudiated by statute or decision in many if not most States, see Prosser, supra, at 245, and by the overwhelming weight of scholarly authority. E. g., American Law Institute, Restatement of Torts (1939), § 885(1) and Comments b—d."

See also Twentieth Century-Fox Film Corp. v. Winchester Drive-In Theatre,

---

2. Comment "d" of the Restatement in reference to the above quoted Section 885 (1) states as follows:

"d. *Limits and effect of rule.* A covenant not to sue clearly indicates by its form that it is not intended to discharge the liability of other tortfeasors jointly liable. On the other hand, a document in the usual form of a release given to one of them is construed as intended to discharge all claims for the tort and operates to discharge others also liable for the same harm. If, however, there is language in the release which manifests that the releasor intended to preserve his rights against the others, effect is given to this manifestation. If such a manifestation does not appear upon the document containing the release, a rule analogous to the parol evidence rule prevents giving effect to the intention of the parties that the other tortfeasor shall not be discharged. Where the discharge is by an oral agreement, the manifested intent of the parties controls."

Inc., 351 F.2d at page 930, wherein the court stated:

"Thus the position expressed by the Restatement and the vast majority of the recent case law is that a release of one tort-feasor need not release all others jointly liable if the release expressly reserves rights against joint tort-feasors * * *

"Numerous other trial courts have reenforced proposition that the present Restatement position is an accurate expression of the current status of the law of general releases. (Citations omitted.)

"Nor do we find the Restatement position to be so unsupportable in reason as appellees would have us believe. The Restatement rule does not prevent an injured party from reserving rights against one or more joint-tortfeasors while releasing others. It merely requires that he announce his intent, and express that reservation in the release agreement."

In accordance with the foregoing it is ordered that the motions for summary judgment on behalf of defendants Pastime and Consolidated be, and the same hereby are denied.

Counsel for the parties have advised the court that all discovery has been completed and the within order completes the disposition of all pending motions. The case is now ready for trial before a jury upon its merit. Counsel estimates that trial time will require between three and four weeks.

In accordance with Section 1292(b) of 28 U.S.C.A., the court hereby certifies that it is of the opinion that the within order involves controlling questions of law as to which there are substantial differences of opinion among the recorded cases, and one of first impression in this court; that an immediate appeal from the within order denying defendants' motion to dismiss plaintiff's action may materially advance the ultimate termination of the litigation; and that defendants should have the opportunity to apply to

the Court of Appeals for the Fourth Circuit for permission to take an appeal from such order, if they should so desire. Should application for an appeal be made by defendants and such permission be granted by the Court of Appeals, then further proceedings in this case shall be stayed until a determination of the appeal.

And it is so ordered.