# DICE *v.* AKRON, CANTON & YOUNGSTOWN RAILROAD CO.

No. 374. Argued December 3–4, 1951.—Decided February 4, 1952.

*Rice A. Hershey* argued the cause for petitioner. With him on the brief was *Frederic O. Hatch.*

*William A. Kelly* argued the cause for respondent. With him on the brief were *Cletus G. Roetzel* and *Andrew P. Martin.*

Opinion of the Court by MR. JUSTICE BLACK, announced by MR. JUSTICE DOUGLAS.

Petitioner, a railroad fireman, was seriously injured when an engine in which he was riding jumped the track. Alleging that his injuries were due to respondent's negligence, he brought this action for damages under the Federal Employers' Liability Act, 35 Stat. 65, 45 U. S. C. § 51 *et seq.*, in an Ohio court of common pleas. Respondent's defenses were (1) a denial of negligence and (2) a written document signed by petitioner purporting to release respondent in full for $924.63. Petitioner admitted that he had signed several receipts for payments made him in connection with his injuries but denied that he had made a full and complete settlement of all his claims. He alleged that the purported release was void because he had signed it relying on respondent's deliberately false statement that the document was nothing more than a mere receipt for back wages.

After both parties had introduced considerable evidence the jury found in favor of petitioner and awarded him a $25,000 verdict. The trial judge later entered judgment notwithstanding the verdict. In doing so he reappraised the evidence as to fraud, found that petitioner had been "guilty of supine negligence" in failing to read the release, and accordingly held that the facts did not "sustain either in law or equity the allegations of fraud by clear, unequivocal and convincing evidence."* This judgment notwithstanding the verdict was reversed by the Court of Appeals of Summit County, Ohio, on the ground that under federal law, which controlled, the jury's verdict must stand because there was ample evi-

---

*The trial judge had charged the jury that petitioner's claim of fraud must be sustained "by clear and convincing evidence," but since the verdict was for petitioner, he does not here challenge this charge as imposing too heavy a burden under controlling federal law.

dence to support its finding of fraud. The Ohio Supreme Court, one judge dissenting, reversed the Court of Appeals' judgment and sustained the trial court's action, holding that: (1) Ohio, not federal, law governed; (2) under that law petitioner, a man of ordinary intelligence who could read, was bound by the release even though he had been induced to sign it by the deliberately false statement that it was only a receipt for back wages; and (3) under controlling Ohio law factual issues as to fraud in the execution of this release were properly decided by the judge rather than by the jury. 155 Ohio St. 185, 98 N. E. 2d 301. We granted certiorari because the decision of the Supreme Court of Ohio appeared to deviate from previous decisions of this Court that federal law governs cases arising under the Federal Employers' Liability Act. 342 U. S. 811.

*First.* We agree with the Court of Appeals of Summit County, Ohio, and the dissenting judge in the Ohio Supreme Court and hold that validity of releases under the Federal Employers' Liability Act raises a federal question to be determined by federal rather than state law. Congress in § 1 of the Act granted petitioner a right to recover against his employer for damages negligently inflicted. State laws are not controlling in determining what the incidents of this federal right shall be. *Chesapeake & Ohio R. Co.* v. *Kuhn,* 284 U. S. 44; *Ricketts* v. *Pennsylvania R. Co.,* 153 F. 2d 757, 759. Manifestly the federal rights affording relief to injured railroad employees under a federally declared standard could be defeated if states were permitted to have the final say as to what defenses could and could not be properly interposed to suits under the Act. Moreover, only if federal law controls can the federal Act be given that uniform application throughout the country essential to effectuate its purposes. See *Garrett* v. *Moore-McCormack Co.,* 317 U. S. 239, 244, and cases there cited. Releases and other

devices designed to liquidate or defeat injured employees' claims play an important part in the federal Act's administration. Compare *Duncan* v. *Thompson,* 315 U. S. 1. Their validity is but one of the many interrelated questions that must constantly be determined in these cases according to a uniform federal law.

*Second.* In effect the Supreme Court of Ohio held that an employee trusts his employer at his peril, and that the negligence of an innocent worker is sufficient to enable his employer to benefit by its deliberate fraud. Application of so harsh a rule to defeat a railroad employee's claim is wholly incongruous with the general policy of the Act to give railroad employees a right to recover just compensation for injuries negligently inflicted by their employers. And this Ohio rule is out of harmony with modern judicial and legislative practice to relieve injured persons from the effect of releases fraudulently obtained. See cases collected in note, 164 A. L. R. 402–415. See also *Union Pacific R. Co.* v. *Harris,* 158 U. S. 326; *Callen* v. *Pennsylvania R. Co.,* 332 U. S. 625; *Chesapeake & O. R. Co.* v. *Howard,* 14 App. D. C. 262, aff'd, 178 U. S. 153; *Graham* v. *Atchison T. & S. F. R. Co.,* 176 F. 2d 819. We hold that the correct federal rule is that announced by the Court of Appeals of Summit County, Ohio, and the dissenting judge in the Ohio Supreme Court—a release of rights under the Act is void when the employee is induced to sign it by the deliberately false and material statements of the railroad's authorized representatives made to deceive the employee as to the contents of the release. The trial court's charge to the jury correctly stated this rule of law.

*Third.* Ohio provides and has here accorded petitioner the usual jury trial of factual issues relating to negligence. But Ohio treats factual questions of fraudulent releases differently. It permits the judge trying a negligence case to resolve all factual questions of fraud "other than fraud

in the factum." The factual issue of fraud is thus split into fragments, some to be determined by the judge, others by the jury.

It is contended that since a state may consistently with the Federal Constitution provide for trial of cases under the Act by a nonunanimous verdict, *Minneapolis & St. Louis R. Co.* v. *Bombolis,* 241 U. S. 211, Ohio may lawfully eliminate trial by jury as to one phase of fraud while allowing jury trial as to all other issues raised. The *Bombolis* case might be more in point had Ohio abolished trial by jury in all negligence cases including those arising under the federal Act. But Ohio has not done this. It has provided jury trials for cases arising under the federal Act but seeks to single out one phase of the question of fraudulent releases for determination by a judge rather than by a jury. Compare *Testa* v. *Katt,* 330 U. S. 386.

We have previously held that "The right to trial by jury is 'a basic and fundamental feature of our system of federal jurisprudence' " and that it is "part and parcel of the remedy afforded railroad workers under the Employers Liability Act." *Bailey* v. *Central Vermont R. Co.,* 319 U. S. 350, 354. We also recognized in that case that to deprive railroad workers of the benefit of a jury trial where there is evidence to support negligence "is to take away a goodly portion of the relief which Congress has afforded them." It follows that the right to trial by jury is too substantial a part of the rights accorded by the Act to permit it to be classified as a mere "local rule of procedure" for denial in the manner that Ohio has here used. *Brown* v. *Western R. Co.,* 338 U. S. 294.

The trial judge and the Ohio Supreme Court erred in holding that petitioner's rights were to be determined by Ohio law and in taking away petitioner's verdict when the issues of fraud had been submitted to the jury on conflicting evidence and determined in petitioner's favor.

The judgment of the Court of Appeals of Summit County, Ohio, was correct and should not have been reversed by the Supreme Court of Ohio. The cause is reversed and remanded to the Supreme Court of Ohio for further action not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE REED, MR. JUSTICE JACKSON and MR. JUSTICE BURTON join, concurring for reversal but dissenting from the Court's opinion.

Ohio, as do many other States,[1] maintains the old division between law and equity as to the mode of trying issues, even though the same judge administers both. The Ohio Supreme Court has told us what, on one issue, is the division of functions in all negligence actions brought in the Ohio courts: "Where it is claimed that a release was induced by fraud (other than fraud in the factum) or by mistake, it is necessary, before seeking to enforce a cause of action which such release purports to bar, that equitable relief from the release be secured." 155 Ohio St. 185, 186, 98 N. E. 2d 301, 302. Thus, in all cases in Ohio, the judge is the trier of fact on this issue of fraud, rather than the jury. It is contended that the Federal Employers' Liability Act requires that Ohio courts send the fraud issue to a jury in the cases founded on that Act. To require Ohio to try a particular issue before a different fact-finder in negligence actions brought under the Employers' Liability Act from the fact-finder on the identical issue in every other negligence case disregards the settled distribution of judicial power between Federal and State courts where Congress authorizes concurrent enforcement of federally-created rights.

It has been settled ever since the *Second Employers' Liability Cases,* 223 U. S. 1, that no State which gives its

---

[1] Chafee, Simpson, and Maloney, Cases on Equity (1951 ed.) 12.

courts jurisdiction over common law actions for negligence may deny access to its courts for a negligence action founded on the Federal Employers' Liability Act. Nor may a State discriminate disadvantageously against actions for negligence under the Federal Act as compared with local causes of action in negligence. *McKnett* v. *St. Louis & S. F. R. Co.*, 292 U. S. 230, 234; *Missouri ex rel. Southern R. Co.* v. *Mayfield*, 340 U. S. 1, 4. Conversely, however, simply because there is concurrent jurisdiction in Federal and State courts over actions under the Employers' Liability Act, a State is under no duty to treat actions arising under that Act differently from the way it adjudicates local actions for negligence, so far as the mechanics of litigation, the forms in which law is administered, are concerned. This surely covers the distribution of functions as between judge and jury in the determination of the issues in a negligence case.

In 1916 the Court decided without dissent that States in entertaining actions under the Federal Employers' Liability Act need not provide a jury system other than that established for local negligence actions. States are not compelled to provide the jury required of Federal courts by the Seventh Amendment. *Minneapolis & St. L. R. Co.* v. *Bombolis,* 241 U. S. 211. In the thirty-six years since this early decision after the enactment of the Federal Employers'. Liability Act; 35 Stat. 65 (1908), the *Bombolis* case has often been cited by this Court but never questioned. Until today its significance has been to leave to States the choice of the fact-finding tribunal in all negligence actions, including those arising under the Federal Act. Mr. Chief Justice White's opinion cannot bear any other meaning:

> "Two propositions as to the operation and effect of the Seventh Amendment are as conclusively determined as is that concerning the nature and character

of the jury required by that Amendment where applicable. (a) That the first ten Amendments, including of course the Seventh, are not concerned with state action and deal only with Federal action. We select from a multitude of cases those which we deem to be leading. *Barron* v. *Baltimore,* 7 Pet. 243; *Fox* v. *Ohio,* 5 How. 410, 434; *Twitchell* v. *Commonwealth,* 7 Wall. 321; *Brown* v. *New Jersey,* 175 U. S. 172, 174; *Twining* v. *New Jersey,* 211 U. S. 78, 93. And, as a necessary corollary, (b) that the Seventh Amendment applies only to proceedings in courts of the United States and does not in any manner whatever govern or regulate trials by jury in state courts or the standards which must be applied concerning the same. *Livingston* v. *Moore,* 7 Pet. 469, 552; *The Justices* v. *Murray,* 9 Wall. 274; *Edwards* v. *Elliott,* 21 Wall. 532; *Walker* v. *Sauvinet,* 92 U. S. 90; *Pearson* v. *Yewdall,* 95 U. S. 294." *Id.,* at 217.

"And it was of course presumably an appreciation of the principles so thoroughly settled which caused Congress in the enactment of the Employers' Liability Act to clearly contemplate the existence of a concurrent power and duty of both Federal and state courts to administer the rights conferred by the statute in accordance with the modes of procedure prevailing in such courts." *Id.,* at 218.

"The proposition that as the Seventh Amendment is controlling upon Congress, its provisions must therefore be applicable to every right of a Federal character created by Congress and regulate the enforcement of such right, but in substance creates a confusion by which the true significance of the Amendment is obscured. That is, it shuts out of view the fact that the limitations of the Amendment are applicable only to the mode in which power or jurisdiction shall be exercised in tribunals of the

United States, and therefore that its terms have no relation whatever to the enforcement of rights in other forums merely because the right enforced is one conferred by the law of the United States." *Id.*, at 219–220.

Although a State must entertain negligence suits brought under the Federal Employers' Liability Act if it entertains ordinary actions for negligence, it need conduct them only in the way in which it conducts the run of negligence litigation. The *Bombolis* case directly establishes that the Employers' Liability Act does not impose the jury requirements of the Seventh Amendment on the States *pro tanto* for Employers' Liability litigation. If its reasoning means anything, the *Bombolis* decision means that, if a State chooses not to have a jury at all, but to leave questions of fact in all negligence actions to a court, certainly the Employers' Liability Act does not require a State to have juries for negligence actions brought under the Federal Act in its courts. Or, if a State chooses to retain the old double system of courts, common law and equity—as did a good many States until the other day, and as four States still do [2]—surely there is nothing in the Employers' Liability Act that requires traditional distribution of authority for disposing of legal issues as between common law and chancery courts to go by the board. And, if States are free to make a distribution of functions between equity and common law courts, it surely makes no rational difference whether a State chooses to provide that the same judge preside on both the common law and the chancery sides in a single litigation, instead of in separate rooms in the same building. So long as all negligence suits in a State are treated in the same way, by the same mode of disposing equitable, non-jury, and common law, jury issues, the State does

[2] *Ibid.*

not discriminate against Employers' Liability suits nor does it make any inroad upon substance.

Ohio and her sister States with a similar division of functions between law and equity are not trying to evade their duty under the Federal Employers' Liability Act; nor are they trying to make it more difficult for railroad workers to recover, than for those suing under local law. The States merely exercise a preference in adhering to historic ways of dealing with a claim of fraud; they prefer the traditional way of making unavailable through equity an otherwise valid defense. The State judges and local lawyers who must administer the Federal Employers' Liability Act in State courts are trained in the ways of local practice; it multiplies the difficulties and confuses the administration of justice to require, on purely theoretical grounds, a hybrid of State and Federal practice in the State courts as to a single class of cases. Nothing in the Employers' Liability Act or in the judicial enforcement of the Act for over forty years forces such judicial hybridization upon the States. The fact that Congress authorized actions under the Federal Employers' Liability Act to be brought in State as well as in Federal courts seems a strange basis for the inference that Congress overrode State procedural arrangements controlling all other negligence suits in a State, by imposing upon State courts to which plaintiffs choose to go the rules prevailing in the Federal courts regarding juries. Such an inference is admissible, so it seems to me, only on the theory that Congress included as part of the right created by the Employers' Liability Act an assumed likelihood that trying all issues to juries is more favorable to plaintiffs. At least, if a plaintiff's right to have all issues decided by a jury rather than the court is "part and parcel of the remedy afforded railroad workers under the Employers Liability Act," the *Bombolis* case should be overruled explicitly instead of left as a derelict bound to occa-

sion collisions on the waters of the law. We have put the questions squarely because they seem to be precisely what will be roused in the minds of lawyers properly pressing their clients' interests and in the minds of trial and appellate judges called upon to apply this Court's opinion. It is one thing not to borrow trouble from the morrow. It is another thing to create trouble for the morrow.

Even though the method of trying the equitable issue of fraud which the State applies in all other negligence cases governs Employers' Liability cases, two questions remain for decision: Should the validity of the release be tested by a Federal or a State standard? And if by a Federal one, did the Ohio courts in the present case correctly administer the standard? If the States afford courts for enforcing the Federal Act, they must enforce the substance of the right given by Congress. They cannot depreciate the legislative currency issued by Congress—either expressly or by local methods of enforcement that accomplish the same result. *Davis* v. *Wechsler,* 263 U. S. 22, 24. In order to prevent diminution of railroad workers' nationally-uniform right to recover, the standard for the validity of a release of contested liability must be Federal. We have recently said: "One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Callen* v. *Pennsylvania R. Co.,* 332 U. S. 625, 630. Such proof of fraud need be only by a preponderance of relevant evidence. See *Union Pacific R. Co.* v. *Harris,* 158 U. S. 326. The admitted fact that the injured worker signed the release is material in tending to show the release to be valid, but presumptions must not be drawn from that fact so as to hobble the plaintiff's showing that it would be unjust to allow a formally good defense to prevail. See § 5, Fed-

eral Employers' Liability Act, 35 Stat. 65, 66, 45 U. S. C. § 55.

The judgment of the Ohio Supreme Court must be reversed for it applied the State rule as to validity of releases, 155 Ohio St. 185, 98 N. E. 2d 301, and it is not for us to interpret Ohio decisions in order to be assured that on a matter of substance the State and Federal criteria coincide. Moreover, we cannot say with confidence that the Ohio trial judge applied the Federal standard correctly. He duly recognized that "the Federal law controls as to the validity of a release pleaded and proved in bar of the action, and the burden of showing that the alleged fraud vitiates the contract or compromise or release rests upon the party attacking the release." And he made an extended analysis of the relevant circumstances of the release, concluding, however, that there was no "clear, unequivocal and convincing evidence" of fraud. Since these elusive words fail to assure us that the trial judge followed the Federal test and did not require some larger quantum of proof, we would return the case for further proceedings on the sole question of fraud in the release.