Ben H. PARKER, as Trustee of the Clute Corporation, Debtor in Proceedings for the Reorganization of a Corporation under Chapter X of the Bankruptcy Act, Plaintiff,

v.

BALTIMORE PAINT AND CHEMICAL CORPORATION, a Maryland corporation, Victor Muscat, Edward Krock, Robert L. Huffines, Jr., and A. Alex Shuford, Jr., Defendants.

Civ. A. No. 8851.

United States District Court
D. Colorado.

Sept. 26, 1967.

See also D.C., 39 F.R.D. 567.

Charles J. Kelly and Robert F. Thompson, Ernest W. Lohf, Denver, Colo., Sp. Counsel for plaintiff.

Wood, Ris & Hames, William K. Ris, Denver, Colo., for defendant A. Alex Shuford, Jr.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

The defendant Shuford has filed a Motion for Summary Judgment based upon his contention that he has been released as a result of the Plaintiff's having settled with the other defendants and having given a release to them in this same action. The suit is one under Section 10(b) and Rule 10(b) 5 of the Securities Exchange Act of 1934. The Plaintiff is a Chapter X trustee for the Clute Corporation. The Complaint names as defendants the Baltimore Paint and Chemical Corporation together with four former Directors of the Clute Corporation; Victor Muscat, Edward Krock, Robert Huffines, Jr., and A. Alex Shuford, Jr. . The defendants are charged with having employed manipulative practices which resulted in divesting the Clute Corporation of shares of Synkeloid Company. The trustee obtained approval of the Court (Judge Chilson) to settle its claims against Baltimore Paint, Muscat, Krock and Huffines. This was an outright release. The Order of Judge Chilson approving the giving of the release by the trustee contained a proviso which excluded the defendant Shuford. The words of the authorization are as follows:

"Ben H. Parker, Trustee of The Clute Corporation, should be, and he hereby is, authorized and directed to compromise and settle the controversy

existing between Baltimore Paint and Chemical Corporation and the Trustee in accordance with the terms and conditions of said offer, as supplemented; and the Trustee should be, and he hereby is, further authorized and directed to do any and all things necessary and appropriate to accomplish said compromise and settlement. Without limiting the generality of the foregoing, Ben H. Parker, as Trustee of The Clute Corporation, should be, and hereby is, authorized and directed, in accordance with said offer of compromise, to cause said Civil Action No. 8851 to be dismissed, with prejudice, so that, in accordance with the terms of said offer, such dismissal shall operate to waive any and all claims asserted by the Trustee in said action against Baltimore Paint and Chemical Corporation, Victor Muscat, Edward Krock and Robert L. Huffines, Jr. Nothing contained herein shall be deemed to authorize dismissal of the proper claims, if any, of the Trustee against A. Alex Shuford, Jr. in said Civil Action No. 8851. Nothing contained herein shall be deemed to limit the effect of acceptance by the Trustee of said offer of settlement in waiving any and all claims, against Baltimore Paint and Chemical Corporation, Victor Muscat, Edward Krock or Robert L. Huffines, Jr."

The release itself failed to reserve rights against Shuford and, in fact, made no mention of him. Shuford's Motion is predicated upon his contention that though this is a statutory action that it is, nevertheless, in the nature of a tort being predicated on fraud and that the allegation is that he acted jointly with the other defendants and thus that they were joint tort feasors in committing whatever acts they committed. Hence, he contends the release of his codefendants operated as a matter of law to release him.

This is unquestionably a federal question case. The remedy provided herein owes its existence to the Act of Congress (15 U.S.C.A. § 78i(b)), and the rule promulgated by the Securities and Exchange Commission (17 C.F.R. 240–10 (b)–5). The jurisdiction of the Federal District Court is in this type of case exclusive (15 U.S.C.A. § 78aa). There is no specific provision in the Securities Exchange Act covering the consequences of the giving of a release to one of several joint violators of the Act. If, therefore, we were to determine this question purely upon the basis of the legal consequences of the giving of the release, we would be called upon to determine whether in circumstances such as this where the federal statute is silent as to the legal effect of a release this Court should look to the state law for guidance or should look to pronouncements in the federal body of law which might be applicable.

■ If, under the above-described stated facts, we were to follow or be guided by the local law the result would be that Shuford's contention would have to be upheld since the State of Colorado follows a strict rule that a release is effective as to all of the tort feasors and, in fact, a reservation of rights clause has no effect. See Morris v. Diers, 134 Colo. 39, 298 P.2d 957; Price v. Baker, 143 Colo. 264, 352 P.2d 90. A second rule is that which is expounded in the Restatement of the Law of Torts, 2d, Section 885(1). This, in essence, states that a release is not effective as to the joint tort feasor with respect to whom there is a reservation of right expressed in the release document.

Still a third rule is that which is contained in the Uniform Act which declares that a release of one tort (feasor) does not release other joint tort (feasors) unless the release expressly so provides.

It is to be noted, first of all, that the United States Supreme Court has indicated a lack of sympathy for the extreme common law version such as that which exists in Colorado whereby the release document effectively releases all joint tort feasors and does so even though there is a reservation of rights. This expression is found in the case of Aro Manufacturing Company v. Convertible Top Replacement Co., 377 U.S. 476, 84

S.Ct. 1526, 12 L.Ed.2d 457 (1964). This was a patent case which involved the effect of a release of a patent infringer on the liability of a contributory infringer. The Supreme Court expressed its approval of the reservation of rights approach as follows:

"A release given a direct infringer in respect of past infringement, which clearly intends to save the releasor's rights against a past contributory infringer, does not automatically surrender those rights." 377 U.S. 476, at 501, 84 S.Ct. 1526, at 1540.

It is also noteworthy that the Supreme Court has held in an analogous type of case; that is, one in which the jurisdiction was based on a federal question and in which there was no provision in the federal law covering the subject that federal common law applied to a question which arose in the litigation. The case was that of Dice v. Akron, Canton and Youngstown Railroad Co., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398. This arose under the Federal Employers' Liability Act. It involved the question of the validity of a release given by a railroad employee to his employer. The employee argued that the release was obtained by fraud. The railroad contended that state law should govern in determining whether there had been a fraud committed. The Supreme Court held that the validity of releases under the Federal Employers Liability Act is a federal question which is to be determined by federal law rather than state law. The Court went on to say:

"Manifestly the federal rights affording relief to injured railroad employees under a federally declared standard could be defeated if states were permitted to have the final say as to what defenses could and could not be properly interposed to suits under the Act. Moreover, only if federal law controls can the federal Act be given that uniform application throughout the country essential to effectuate its purposes. (Cases cited). Releases and other devices designed to liquidate or defeat injured employees'

claims play an important part in the federal Act's administration. (Cases cited). Their validity is but one of the many interrelated questions that must constantly be determined in these cases according to a uniform federal law." 342 U.S. 359, at 361, 72 S.Ct. 312, at 314.

Therefore, judged on the basis of whether the federal or state law would apply, we would have to conclude that the instant question is a federal one governed by the federal body of law. Secondly, it would also have to be our conclusion that the Supreme Court has approved at least the middle ground and thus a release which includes a reservation of rights provision does not release the joint tort feasor with respect to whom rights were expressly reserved.

We have reached the conclusion, however, that the answer to the question that is raised by the present Motion is found in the file of this case and within the framework of the Bankruptcy Act.

The trustee is, of course, an arm of the Court. He cannot release a claim unless he has Court authority. Section 27 of the Bankruptcy Act (11 U.S.C. § 50) provides:

"Compromises. The receiver or trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate."

Section 27 of the Bankruptcy Act applies fully to Chapter X proceedings. See 6A Collier on Bankruptcy, Section 8.07.

Thus the trustee is not empowered to settle or compromise any case unless he has the approval of the Court. Had the trustee given an express release to the defendant Shuford pursuant to the authority granted by Judge Chilson in his Order of March 31, 1967, his action would have been contrary to the express terms of the authorities and, therefore, beyond the authority of the trustee. Similarly, the silence of the release document is, in our view, ineffectual. It did

not release Shuford because the trustee had no power to do so. It is not reasonable to hold that the trustee has power to do by omission or inadvertence that which he lacks authority to do directly. Therefore, we hold that Shuford was not released by operation of law because of the failure of the trustee to expressly reserve rights against him. The rights were effectively reserved by the Court in its authorization.

The Motion for Summary Judgment should be and it is hereby denied.