Damián García Mercado, Petitioner, *v.* Superior Court of Puerto Rico, San Juan Part, Francisco Collazo Lizardi, Judge, Respondent; Alcoa Steamship Co., Inc., Intervener.

No. C-66-47.          Decided October 14, 1970.

*Nachman, Feldstein, Gelpí, Antonetti & Smith* for petitioner. *Gilberto Gierbolini, Solicitor General, J. F. Rodríguez Rivera, Acting Solicitor General, Ida Cardona Hernández Orenstein,* and *Lolita Miranda Escudero, Assistant Solicitors General,* for the Commonwealth of Puerto Rico. *Hartzell, Fernández & Novas* and *José L. Novas Dueño* for intervener.

PER CURIAM: We issued writ of certiorari in this case to examine whether or not the Superior Court of Puerto Rico, San Juan Part, acted correctly in denying a motion requesting that this civil action be heard before a jury.

The case originated by a complaint filed by Damián García-Mercado, petitioner herein, before the Superior Court, where he alleged that he suffered an accident and physical injuries while working in a vessel owned by defendant, the Alcoa Steamship Corporation. The pleadings do not state the place where the accident occurred, but plaintiff informs us in his Memorandum of Authorities that it did not occur in Puerto Rican waters.[1] In the Supplementary Report of the Solicitor General, presented on March 5, 1970, we are told that the accident occurred in the waters of or near New Orleans.

In his complaint plaintiff makes four claims. The first one is grounded on negligence and is done by virtue of the Jones Act of 1920; 41 Stat. 1007; 46 U.S.C. § 688. The second claim is grounded on unseaworthiness of the vessel. The third is grounded on his right to receive medical attention on account of the injuries and the fourth claim is grounded on his right to receive maintenance and cure expenses.

When a merchant marine receives personal injuries in the course of his work three causes of action may arise against his employer, the shipping company. One for maintenance and cure; another, for damages caused by the unseaworthiness of the vessel; and the third, also for damages caused by negligence pursuant to the provisions of the Jones Act above-cited. The first cause of action mentioned above, that is, maintenance and cure, generally includes three items: (1)

---

[1] If the accident had occurred in Puerto Rican waters the case would have been covered by the Workmen's Accident Compensation Act of Puerto Rico, 11 L.P.R.A. § 1; *Fonseca* v. *Prann*, 282 F.2d 153 (1st Cir. 1960); *Flores* v. *Prann*, 175 F.Supp. 140 (1959); *Inter Island Shipping Corp.* v. *Industrial Commission*, 89 P.R.R. 635 (1963) and authorities cited therein.

maintenance which is a living allowance; (2) cure, which covers medical expenses, and (3) wages.

The aforecited Jones Act of 1920, which amended the Seamen's Act of 1915, granted to merchant marines essentially the same rights against their employers as those granted by the Federal Employers' Liability Act to railway employees. 35 Stat. 65 (1908) as amended, 45 U.S.C. §§ 51–60. Those rights thus granted in 1920 include the right to bring the actions for damages before a jury and the right to resort to the doctrine of comparative negligence.

Before we pass onto the question raised in this case—that of trial by jury—it is advisable to clarify that the Civil Code of Puerto Rico in its § 1802 grants to all litigants, without exception, the protection of said doctrine of comparative negligence. 31 L.P.R.A. § 5141. Said § 1802 reads as follows:

"A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity."

Relying on the aforementioned Jones Act of 1920 the plaintiff filed a motion requesting trial by jury before the Superior Court. The motion was denied. The Jones Act (46 U.S.C. § 688) insofar as pertinent provides the following:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . . ."

Prior to the 1920 amendment the claims which merchant marines could raise for maintenance and cure and for damages caused by unseaworthiness were admiralty actions and were brought before a judge without jury.

Through the Jones Act of 1920 Congress sought to equalize the merchant seamen with the other litigants in damages in the United States. That is, it sought to give merchant seamen the right to hear their claims for damages before a jury, as has been traditionally done by the other litigants in the United States. The Jones Act of 1920, then, has an equalizing effect in the United States, but its application in Puerto Rico would have a diametrically opposite effect. This is, in Puerto Rico, where no litigant in damages is entitled to trial by jury, to give that right to seamen would be, not to equalize them to the other litigants, but to grant them a privilege above the others. This would bring about a discrimination against the mass of litigants who are not merchant marines.

█ In Puerto Rico the action for damages, including what in the United States is called negligence, is brought and has always been brought before a judge without a jury. This has been so ever since courts of justice exist in Puerto Rico, right after this island was discovered and colonized by Spain. As far as we know, no protest has ever been raised here against this system of civil litigation without a jury nor have any petitions been made requesting that the same be changed. Puerto Rico is a civil law jurisdiction and the common law has never been in force here. *Widow of Fornaris* v. *American Surety Co.*, 93 P.R.R. 28, 46 (1966) and authorities cited therein. The idea of a jury for civil actions is completely foreign to the system of jurisprudence which operates and has always operated in Puerto Rico.

The Constitution of Puerto Rico guarantees the right to trial by jury in criminal prosecutions for felonies, Art. II, § 11; L.P.R.A., vol. 1, p. 219 (1965 ed.), but neither our Constitution nor the Puerto Rican laws provide for a trial by jury in civil actions. The actions of a civil nature are heard and are decided in Puerto Rico by the court without a jury. Judiciary Act of Puerto Rico, Act No. 11 of July 24, 1952, 4 L.P.R.A. §§ 121 and 181; Rule 43.1 of the Rules of Civil

Procedure of Puerto Rico, 32 L.P.R.A. App. II (L.P.R.A., vol. 9, p. 191, 1969 ed.). See Clark & Rogers, *"The New Judiciary Act of Puerto Rico: A Definite Court Reorganization"*, 61 Yale L.J. 1147 (1952); Snyder, *"New Puerto Rico Judicial System"*, 36 Journal Am. Jud. Soc'y 136 (1953).

■ It is advisable to clarify that from the point of view of United States law petitioner's request for a trial by jury in this case relies solely on statutory and not on constitutional grounds. In the United States the trial by jury in civil actions of maritime jurisdiction was never known during the time of the colonies nor under the Constitution. Already in *Waring* v. *Clarke*, 5 Howard 441 (1847); 12 L.Ed. 226, 235, it was concluded that what the seventh amendment guarantees is that in suits at common law the trial by jury should be "preserved" and that said amendment is not applicable to suits in admiralty. There being no trial by jury in admiralty there was nothing to preserve in regard to the trial by jury in said maritime law.

It has been decided that state courts have concurrent jurisdiction with federal courts to entertain cases under the Jones Act. *Engel* v. *Davenport*, 70 L.Ed. 813 (1926); *Panamá Railroad Co.* v. *Vázquez*, 70 L.Ed. 1085 (1926); *Messel* v. *Foundation Co.*, 71 L.Ed. 1135 (1927); *Canet* v. *Moore McCormack Co.*, 317 U.S. 239 (1942); *Romero* v. *International Term. Co.*, 358 U.S. 354 (1959).

We are aware of the fact that insofar as the federal jurisdiction and the States are concerned, the Supreme Court of the United States has held that the right to trial by jury is part of the remedy granted by the Jones Act and the Federal Employer's Liability Act. *Jacob* v. *New York*, 315 U.S. 752 (1942); *Bailey* v. *Central Vermont Ry.*, 319 U.S. 350 (1943); *Blair* v. *B.O.R. Co.*, 323 U.S. 600 (1945); *Schulz* v. *Pennsylvania R. Co.*, 350 U.S. 523; *A & G Stevedores* v. *Ellerman Lines*, 369 U.S. 355.

In *Dice* v. *Akron*, 342 U.S. 359 (1952), an action brought under the Federal Employer's Liability Act in an Ohio state court, defendant's contention in the sense that if a state may provide for a nonunanimous jury, *Minneapolis & St. Louis R. Co.* v. *Bombolis*, 241 U.S. 211, it may also provide for a phase of the question to be singled out from the jury and determined by a judge, was rejected. In answering the aforementioned argument based on the *Bombolis* case, the court, in *Dice* v. *Akron*, stated the following at page 363:

"The *Bombolis* case might be more in point had Ohio abolished trial by jury in all negligence cases including those arising under the federal Act. But Ohio has not done this. It has provided jury trials for cases arising under the federal Act but seeks to single out one phase of the question of fraudulent releases for determination by a judge rather than by a jury."

In *Fitzgerald* v. *U.S. Lines*, 374 U.S. 16 (1963), a case under the Jones Act, brought before a federal District Court, the injured complainant based his complaint on negligence and also on unseaworthiness. Besides suing for personal injuries he sued for medical attention, for maintenance and cure, and wages. He demanded a jury trial for all his causes of action. The court granted a jury trial on the cause of action under the Jones Act and on the cause of action based on unseaworthiness but it concluded that the claims for maintenance and cure (which are traditionally admiralty remedies) should be decided by a judge without jury. The Supreme Court of the United States reversed and concluded that when a maintenance and cure claim is joined with a Jones Act claim all must be submitted to the jury when both arise from one set of facts. The Court stated that even when the causes of action grounded on negligence, unseaworthiness, and on maintenance and cure have different origins they should be submitted to the jury when they arise from the same facts. The Court argued that to do otherwise and split the lawsuit would

create unnecessary complications and confusions. 374 U.S. at pp. 18 and 19.

In *Fitzgerald*, as well as in *Dice* v. *Akron*, there existed jury trial but it was sought to split the lawsuit and the Supreme Court held that it could not be done. Neither of these cases dealt with a situation like ours where we do not have in our jurisdiction the trial by jury for civil actions. It is significant that in *Dice* v. *Akron* the Court stated that the *Bombolis* case would have been more pertinent or more effective if the State had abolished the trial by jury in *all* negligence cases. It is evident that the spirit of the Jones Act and of the judicial opinions which construe it is to the effect that in those jurisdictions *providing* for a trial by jury for civil actions (1) the actions under the Jones Act should be brought before a jury and (2) that when from the same facts also actions arise which were traditionally admiralty actions, the latter should also be decided by the jury, for the lawsuit should not be split.

Discussing this question, Professor Moore, after explaining that the seaman may put forward his claims in the federal courts in common law or in admiralty having the right of jury trial in the first case but not in the second, states that the seaman may also sue under the Jones Act in the state courts. In this last assumption, Moore explains, "The seaman may, then, put forward his entire claim in a state action and enjoy a jury trial on all the issues, *provided, of course, the state practice gives a jury trial on legal issues of this character.*" 5 Moore's Federal Practice 282, § 38.35 [4], 2d ed. (1969). (Italics ours.)

It is also significant that when insisting on holding a *civil* suit before a jury the Supreme Court of the United States has stated several times that the trial by jury in civil cases is a fundamental feature in the system of *federal* jurisprudence. *Jacob* v. *New York City*, 315 U.S. 752 (Jones Act), *Bailey* v.

*Central Vermont Ry.*, 319 U.S. 350, 354 (F.E.L.A.) ; *Dice* v. *Akron*, 342 U.S. 359, 363 (F.E.L.A.).[2]

From the foregoing it is evident that the jurisdictions wherein trial by jury exists for civil cases cannot refuse trial by jury to those who file suit under the Jones Act. It is also settled that in those jurisdictions where jury trial exists for civil cases the lawsuits cannot be split to be heard part before a jury and part before a judge because some causes of action are traditionally admiralty causes and others are grounded on the Jones Act, if the different causes of actions arise from the same facts.

Of course, it is not incumbent upon us to decide what would be the situation in a case under the Jones Act being tried in a State court in which State the right to trial by jury in civil cases did not exist or had been abolished. The case at bar and our decision are exclusively limited to the particular situation of Puerto Rico.

The Congress, the Supreme Court, the Presidency, and the authors have recognized the special relationship existing between Puerto Rico and the United States since 1952 by virtue of the compact and the Constitution of Puerto Rico. The examples of this are numerous but we shall mention only some which are representative and eminent:

1. Public Law 600 of the 81st Congress, approved on July 3, 1950, 64 Stat. 319, by which Congress with the approval of the President stated that "fully recognizing the principle of government by consent, this Act is now adopted in the nature of a compact so that the people of Puerto Rico may organize a government pursuant to a constitution of their own adoption."

2. Public Law 447 of the 82d Congress, approved on July 3, 1952, 66 Stat. 327, where it is stated that Law 600

---

[2] "The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence." *Jacob* v. *New York City*, 315 U.S. 752.

"was adopted by the Congress as a compact with the People of Puerto Rico."

3. (a) Memorandum of the United States Government, (b) letter of March 21, 1953, from the United States Representative to the United Nations, to the Secretary General of said body, (c) letter of January 17, 1953, from the Governor of Puerto Rico to the President, and other related documents, 28 Department of State Bulletin (U.S.) 584.

4. Memorandum of the President of the United States concerning the Commonwealth of Puerto Rico for the heads of the executive departments and agencies of the United States Government, 26 Federal Register 6695 (1961), where the following is set forth: "Because of the importance and significance of Puerto Rico in the relations of the United States with Latin America and other nations, it is essential that the executive departments and agencies be completely aware of the unique position of the Commonwealth, and that policies, actions, reports on legislation, and other activities affecting the Commonwealth should be consistent with the structure and basic principles of the Commonwealth."

5. Judicial recognition of the "unique historic relationship between the Congress and the Commonwealth of Puerto Rico." *Katzenbach* v. *Morgan*, 384 U.S. 641, 658. In *Granville-Smith* v. *Granville-Smith*, 349 U.S. 1, 6, the court distinguished the current situation of Puerto Rico from the previous one. There the situation prior to 1952 was referred to as "pre-Commonwealth Puerto Rico."

6. Examples of the local application to Puerto Rico of federal laws with the previous express consent of the Legislative Assembly of Puerto Rico: (a) Public Law 859, 85th Congress, and Act No. 3 of May 6, 1959, 1959 Sess. Laws of Puerto Rico, Third Regular Session, p. 13, through which the Legislature of Puerto Rico expressed its consent to the application in Puerto Rico of Sec. 5314 of the U.S. Internal

Revenue Code of 1954, as amended by Public Law 859 of Congress; (b) Joint Resolution No. 97 of June 22, 1956 (J.R., 1956, p. 244), consenting to the application in Puerto Rico of a federal processing tax on refined sugar levied by the Sugar Act of 1948, Public Law 545 of Congress, May 29, 1956; (c) Joint Resolution No. 1, of July 25, 1956, of the Legislature of Puerto Rico (J.R., 1956, p. 334), expressing consent for the application to Puerto Rico of Secs. 4701–4707 and 4771–4776 of the U.S. Internal Revenue Code of 1954, as amended, on and after the effective date of Public Law 728 of the 84th Congress.

7. McGruder, *"The Commonwealth Status of Puerto Rico,"* 15 U. of Pitt. L. Rev. 1 (1953); Friedrich, Puerto Rico: Middle Road to Freedom (1959); Wells, The Modernization of Puerto Rico 220–241, Harvard University Press (1969); Cancio, Chief Judge, U.S. Dist. Ct. for P.R., *"The Power of the Congress to Enter into a Compact with the People of Puerto Rico: The Legal Status of the Compact,"* 22 *Rev. C. Abo. P.R.* 341 (1962). For a more comprehensive relation of books, official documents, and articles on the Commonwealth of Puerto Rico, see Appendix of the case *Commonwealth* v. *Márquez,* 93 P.R.R. 382, 397 (1966).

Section 9 of the Federal Relations Act between the United States and Puerto Rico provides that:

"The statutory laws of the United States *not locally inapplicable,* except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States. . . ."[3] (Italics ours.)

And with regard to maritime questions in particular, Congress in § 8 of said Federal Relations Act provided that:

---

[3] 48 U.S.C. § 734. Public Law 600 of Congress, of July 3, 1950, consistent with its spirit, repealed a number of sections of the Jones Act of March 2, 1917, which Jones Act was formerly the Organic Act of Puerto Rico, and designated the remaining sections as the Puerto Rican Federal Relations Act.

"All laws of the United States for the protection and improvement of the navigable waters of the United States and the preservation of the interests of navigation and commerce, *except so far as the same may be locally inapplicable,* shall apply to said island and waters and to its adjacent islands and waters; . . . ." (Italics ours.) 48 U.S.C. § 749.

■ As we stated before, because jury trials for civil actions do not exist in Puerto Rico, because that is foreign to our civil juridical tradition, because neither our laws nor our Rules of Civil Procedure provide for it, and because our legislation provides for civil suits to be tried before the court without a jury, the provision of the Jones Act of 1920, 46 U.S.C. § 688, is locally inapplicable to Puerto Rico, inasmuch as it provides for jury trials in civil suits. For a case where a federal law was found to be inapplicable to Puerto Rico, after the Commonwealth was established, see *United States* v. *Ríos,* 140 F.Supp. 376 (1959).

As it may be seen, this case is an example of the enduring problem raised by the operation and development of the two sovereignties—the state and the federal—that exists in every federal system. Early in the life of the Republic, John Quincy Adams realized this when he said that the federal system was "the most complicated government on the face of the globe."[4] However, that difficulty has not prevented the American federal system from working. This has been thus because as a rule the main arbiter of said system, the Supreme Court of the United States, has construed its juridical framework with imagination and flexibility. This has been occasionally called "judicial statesmanship." Undoubtedly it is.

Consistent with the foregoing, the Supreme Court of the United States has always shown a wise deference towards the governmental and judicial processes of Puerto Rico. Now, due to the Puerto Rican constitutional developments of 1950–

---

[4] Adams, The Jubilee of the Constitution 115 (Colman, ed. 1839), cited in Brennan, *"Some Aspects of Federalism,"* 29 N.Y.U. L. Rev. 945, 946.

1952, is more valid than ever the pronouncement of the Supreme Court of the United States to the effect that:

"Orderly development of the government of Puerto Rico as an integral part of our governmental system is well served by a careful and consistent adherence to the legislative and judicial policy of deferring to the local procedure and tribunals of the Island." *Bonet* v. *Yabucoa Sugar Co.*, 306 U.S. 505, 510.

See in that same sense *Bonet* v. *Texas Co.*, 308 U.S. 463, 470–471; *Díaz* v. *González*, 261 U.S. 102, 105–106; *Nadal* v. *May*, 233 U.S. 447.

As an author properly stated recently, Puerto Rico occupies a unique place in American law and a unique treatment is desirable to meet Puerto Rico's special political and cultural situation. This means, stated the author, that said treatment should answer to the situation and to the needs of the people. Leibowitz, *"The Applicability of Federal Law to the Commonwealth of Puerto Rico,"* 37 *Rev. Jur. U.P.R.* 615, 674 (1968).

For the foregoing considerations, the order of the trial court refusing a trial by jury in the Superior Court of Puerto Rico in this case will be affirmed.[5]

Mr. Chief Justice Negrón Fernández, Mr. Justice Hernández Matos, and Mr. Justice Martínez Muñoz did not participate herein.

---

[5] In these cases of damages originating at sea, plaintiffs in Puerto Rico may choose between trying their cases before a Commonwealth court without a jury or before a jury in the United States District Court in Puerto Rico. Both systems of law are available to them in Puerto Rico, to choose the one they prefer.