# Congressional Authority to Require State Courts to Use Certain Procedures in Products Liability Cases

Congress may enact legislation that requires state courts to submit the determination of the amount of punitive damage awards in products liability cases to judges rather than juries if it also enacts federal law supplying the substantive law to be applied in such cases.

Legislation that does not enact a substantive law of products liability, but simply attempts to prescribe directly the state court procedures to be followed in products liability cases arising under state law raises significant Tenth Amendment questions Given the current state of Tenth Amendment jurisprudence, however, it is unlikely that a court would invalidate such a statute.

In deciding whether to propose legislation that would impose procedural requirements on state court proceedings, the Department should give due consideration to the federalism concerns that would be raised, as required by section 5(a) of Executive Order No. 12612.

December 19, 1989

MEMORANDUM OPINION FOR THE DEPUTY DIRECTOR
OFFICE OF POLICY DEVELOPMENT

This memorandum responds to your request for our views as to whether Congress may constitutionally require the states to submit the determination of the amount of punitive damages in products liability cases to the judge rather than the jury.[1] As outlined more fully below, we believe that Congress may require the state courts to follow this procedure if Congress enacts federal law that will supply the substantive law of products liability being applied in such cases. Tenth Amendment questions may be raised if Congress does not enact any such substantive law, but merely imposes the procedural requirement; given the current state of Tenth Amendment jurisprudence, however, we think it is unlikely that a court would invalidate such a statute. Nevertheless, we believe that the Department, in deciding whether to propose such a statute, should give due consideration to the federalism concerns that would be raised.

It is well established that Congress generally may require state courts of appropriate jurisdiction to entertain causes of action arising under fed-

---

[1] This Office has previously advised the Office of Policy Development that the imposition of such a requirement in the federal courts would not violate the Seventh Amendment. See Memorandum for Stephen C Bransdorfer, Deputy Assistant Attorney General, Civil Division, from Lynda Guild Simpson, Deputy Assistant Attorney General, Office of Legal Counsel (Sept. 29, 1989).

eral law, at least where there is an analogous state-created right enforceable in state court. *See Testa v. Katt,* 330 U.S. 386 (1947); *Second Employers' Liability Cases,* 223 U.S. 1 (1912); *see generally* Charles A. Wright, *The Law of Federal Courts* § 45 (4th ed. 1983). It is also clear that federal law may properly govern certain procedural issues in state court suits concerning federal causes of action where this is necessary to secure the substantive federal right. *See Norfolk & W. Ry. v. Liepelt,* 444 U.S. 490 (1980) (upon request of party, jury in state court suit under FELA must, as a matter of federal law, be given cautionary instruction that damages award is not taxable and that taxes are not to be considered); *Dice v. Akron, C. & Y. R.R.,* 342 U.S. 359 (1952) (state court procedural rule allowing judge to determine factual issue of fraudulent releases was inapplicable in FELA case in light of the statutory right to trial by jury which was "part and parcel" of the remedy afforded under the FELA); *Brown v. Western Ry.,* 338 U.S. 294, 298 (1949) (rejecting application, in FELA suit in state court, of Georgia rule of procedure that pleading allegations are construed "most strongly against the pleader"; the Court concluded that "[s]trict local rules of pleading cannot be used to impose unnecessary burdens upon rights of recovery authorized by federal laws"); *Bailey v. Central Vt. Ry.,* 319 U.S. 350 (1943) (under FELA, Congress has provided for right to jury).

In light of these authorities, it seems clear that if Congress enacts a substantive federal law of products liability, it may also establish rules of procedure, binding upon the states, that are necessary to effectuate the rights granted under the substantive law.[2] In particular, *Dice* and *Bailey* suggest that the allocation of functions between judge and jury in applying federal substantive law may be settled by Congress as a matter of federal law. Accordingly, we conclude that Congress may require state courts to have judges determine the amount of punitive damages in order to effectuate the corresponding substantive rights with respect to products liability that Congress has created.

Different questions are presented where Congress does not enact a substantive law of products liability to be applied by the states, but simply attempts to prescribe directly the state court procedures to be followed in products liability cases arising under state law. Such an action raises potential constitutional questions under the Tenth Amendment,[3] since state court procedures in applying state law would appear to be an

---

[2] This is true regardless of whether a state constitution provides a broader right to jury trial in civil cases than does the Seventh Amendment to the federal constitution A constitutionally authorized federal law may preempt conflicting provisions of a state constitution. *See* U.S. Const. art. VI, cl. 2 (Laws of the United States enacted pursuant to the federal constitution "shall be the supreme Law of the Land, and the Judges in every State shall be bound thereby, *any Thing in the Constitution* or Laws of any State to the Contrary notwithstanding.") (emphasis added).

[3] The Tenth Amendment provides

    The powers not delegated to the United States by the Constitution, nor prohibited by it to
    the States, are reserved to the States respectively, or to the people.

area that is generally within a state's exclusive control. *See* Henry M. Hart, Jr., *The Relations Between State and Federal Law*, 54 Colum. L. Rev. 489, 508 (1954) ("The general rule, bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them."); *cf. Wolfe v. North Carolina*, 364 U.S. 177, 195 (1960) ("'Without any doubt it rests with each State to prescribe the jurisdiction of its appellate courts, the mode and time of invoking that jurisdiction, and the rules of practice to be applied in its exercise ....'") (quoting *John v. Paullin*, 231 U.S. 583, 585 (1913)). There are no cases directly on point, and current Tenth Amendment jurisprudence cannot be said to be entirely settled. *See Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 580 (1985) (Rehnquist, J., dissenting); *id.* at 589 (O'Connor, J., dissenting). Nevertheless, under existing case law, we think it is unlikely that a court would invalidate a federal statute requiring states to assign the determination of the amount of punitive damages to the judge rather than to the jury.

In *Garcia*, the Supreme Court overruled its decision in *National League of Cities v. Usery*, 426 U.S. 833, 852 (1976), which had held that Congress' power under the Commerce Clause, when construed in light of Tenth Amendment principles, does not include the power to "directly displace the States' freedom to structure integral operations in areas of traditional governmental functions." *Garcia* expressly rejected as unworkable this "traditional governmental functions" test, and instead held that limitations on congressional power to regulate the states "are more properly protected by procedural safeguards inherent in the structure of the federal system than by judicially created limitations on federal power." 469 U.S. at 552; *see also South Carolina v. Baker*, 485 U.S. 505, 512 (1988) ("*Garcia* holds that the [Tenth Amendment] limits [on Congress' authority to regulate state activities] are structural, not substantive — *i.e.*, that States must find their protection from congressional regulation through the national political process, not through judicially defined spheres of unregulable state activity.").

Accordingly, under existing case law, the only apparent ground for raising a Tenth Amendment challenge to congressional regulation of state activity is to show that there were "extraordinary defects in the national political process" that frustrated the normal procedural safeguards inherent in the federal system. *Baker*, 485 U.S. at 512; *see also id.* at 513 ("Where, as here, the national political *process* did not operate in a defective manner, the Tenth Amendment is not implicated.") In *Baker*, South Carolina argued that a procedural failure had occurred because the legislation at issue had been enacted by "'an uninformed Congress relying upon incomplete information.'" *Id.* (citation omitted). The Court rejected this invitation to "second-guess the substantive basis for congressional legislation," and stated that "[i]t suffices to observe that South Carolina has not even alleged that it was deprived of any right to participate in the

national political process or that it was singled out in a way that left it politically isolated and powerless." *Id.* at 512-13. Although it is almost impossible to apply the *Baker* standard to legislation that has not yet been enacted, we nonetheless find it difficult to imagine circumstances under which any state could successfully argue that the enactment of national legislation requiring the states to use certain procedures in products liability cases had been adopted pursuant to a process that left the state "politically isolated and powerless."

In any event, it is uncertain whether the proposed legislation would have been held to violate the Tenth Amendment even under pre-*Garcia* case law. In *FERC v. Mississippi*, 456 U.S. 742 (1982), the Court held that since Congress could have preempted the states completely in the field of utility regulation, Congress did not violate the Tenth Amendment by conditioning continued state regulation in this field on state consideration of proposed federal regulatory standards. *Id.* at 761-70.[4] Furthermore, the Court held that Congress could properly require the states to use certain notice and comment procedures when acting on the proposed federal standards. *See id.* at 771 ("If Congress can require a state administrative body to consider proposed regulations as a condition to its continued involvement in a pre-emptible field — and we hold today that it can — there is nothing unconstitutional about Congress' requiring certain procedural minima as that body goes about undertaking its tasks.").

Because Congress could rationally conclude that state products liability suits have a substantial effect on interstate commerce, both with respect to the goods at issue and with respect to the interstate business of insurance, Congress' power under the Commerce Clause is probably sufficient to allow it completely to preempt the states in the field of products liability. *See Hodel v. Indiana*, 452 U.S. 314, 323-24 (1981) ("A court may invalidate legislation enacted under the Commerce Clause only if it is clear that there is no rational basis for a congressional finding that the regulated activity affects interstate commerce, or that there is no reasonable connection between the regulatory means selected and the asserted ends."); *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 277 (1981) (same); Harvey S. Perlman, *Products Liability Reform in Congress: An Issue of Federalism*, 48 Ohio St. L.J. 503, 507 (1987) ("Under current interpretations of the commerce clause, Congress presumably has the authority to enact a preemptive product liability reform act."); 132 Cong. Rec. 25,479-80 (1986) (reprinting report of Legislative Attorney, Congressional Research Service, on constitutionality of federal tort reform). Accordingly, *FERC v. Mississippi* suggests that Congress may choose the lesser course of allowing the states to contin-

---

[4] It should be noted that, to the extent that *FERC v. Mississippi* contains language offering greater Tenth Amendment protection to states than that described in *Garcia*, the Court in *Baker* stated that the continued vitality of such language was "far from clear." *Baker*, 485 U S at 513

ue to regulate this field, while conditioning their continued involvement on state use of certain federally prescribed procedures. We thus think it unlikely that a court would invalidate a federal statute requiring certain procedures in state law products liability cases arising in state courts.

Nevertheless, we believe that the Department, in deciding whether to recommend such legislation, should give due consideration to the federalism concerns that would be raised. *See* Exec. Order No. 12612, § 5(a), 3 C.F.R. 252, 255 (1987) ("Executive departments and agencies shall not submit to the Congress legislation that would ... [d]irectly regulate the States in ways that would interfere with functions essential to the States' separate and independent existence or operate to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions.").[5]

WILLIAM P. BARR
*Assistant Attorney General*
*Office of Legal Counsel*

---

[5] We do note, however, that such a proposal would not be wholly without precedent. *See* 42 U.S.C. § 9658(a) (altering state limitations period for certain tort claims brought under state law), *Ayers v. Township of Jackson*, 106 N J 557, 582, 525 A 2d 287, 300 (1987) ("CERCLA now pre-empts state statutes of limitation [under certain circumstances]")