DAMIÁN GARCÍA MERCADO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. FRANCISCO COLLAZO LIZARDI, JUEZ, demandado; ALCOA STEAMSHIP CO., INC., interventora.

*Número:* C-66-47    *Resuelto:* 14 de octubre de 1970

*Nachman, Feldstein, Gelpí, Antonetti & Smith,* abogados del peticionario; *Gilberto Gierbolini, Procurador General, J. F. Rodríguez Rivera, Procurador General Interino, Ida Cardona Hernández de Orenstein* y *Lolita Miranda de Escudero, Procuradoras Generales Auxiliares,* abogados del Estado Libre Asociado de Puerto Rico; *Hartzell, Fernández & Novas* y *José L. Novas Dueño,* abogados de la interventora.

PER CURIAM: Expedimos auto de *certiorari* en este caso para examinar si procedió correctamente o no el Tribunal Superior de Puerto Rico, Sala de San Juan, al declarar sin lugar una moción solicitando que este pleito civil fuese visto ante un jurado.

El caso se originó mediante la presentación de una demanda por Damián García Mercado, el aquí peticionario, en el Tribunal Superior, en la cual alegó que sufrió un accidente y daños físicos mientras trabajaba en un barco propiedad de la demandada, la Alcoa Steamship Corporation. No dicen las alegaciones en dónde ocurrió el accidente, pero el demandante nos informa en su Memorando de Autoridades que el mismo no ocurrió en aguas de Puerto Rico.[1] En el Informe Suplementario del Procurador General, presentado en 5 de marzo de 1970, se nos informa que el accidente ocurrió en aguas de o cerca de New Orleans.

En su demanda el demandante hace cuatro reclamaciones. La primera está basada en negligencia y se hace a virtud de la Ley Jones de 1920; 41 Stat. 1007; 46 U.S.C. sec. 688. La

---

[1] Si el accidente hubiese ocurrido en aguas de Puerto Rico el caso estaría cubierto por la Ley de Compensaciones por Accidentes del Trabajo de Puerto Rico, 11 L.P.R.A. sec. 1; *Fonseca* v. *Prann,* 282 F.2d 153 (1st Cir. 1960); *Flores* v. *Prann,* 175 F.Supp. 140 (1959); *Inter Island Ship. Corp.* v. *Comisión Industrial,* 89 D.P.R. 648 (1963) y autoridades allí citadas.

segunda reclamación se basa en la condición innavegable (*unseaworthiness*) del barco. La tercera se basa en su derecho a recibir atención médica por motivo de las lesiones y la cuarta reclamación se basa en su derecho a recibir gastos de sustento y curación (*maintenance and cure*).

Cuando un marino mercante recibe daños personales en el curso de su trabajo pueden surgir tres causas de acción contra su patrono, la compañía naviera. Una, por sustento y curación (*maintenance and cure*); otra, por daños (*damages*) basada en la innavegabilidad del barco (*unseaworthiness*); y la tercera, también por daños basada en negligencia a tenor con lo dispuesto en la Ley Jones antes citada. La primera causa de acción arriba mencionada, la de sustento y cura, incluye generalmente tres partidas: (1) sustento (*maintenance*) la cual es una mesada (*living allowance*); (2) cura, la cual cubre gastos médicos y (3) salarios.

■ La citada Ley Jones de 1920, la cual enmendó la Seamen's Act de 1915, le concedió a los marinos mercantes esencialmente los mismos derechos contra sus patronos que los que la *Federal Employers' Liability Act* le había concedido a los empleados de los ferrocarriles. 35 Stat. 65 (1908) según enmendada, 45 U.S.C. secs. 51–60. Esos derechos así concedidos en el 1920 incluyen el derecho a ventilar los casos de daños y perjuicios ante jurado y el de acogerse a la doctrina de negligencia comparativa.

Antes de que entremos en la cuestión que plantea este caso—la del juicio por jurado—conviene que aclaremos que el Código Civil de Puerto Rico en su Art. 1802 concede a todos los litigantes, sin excepción, el amparo de dicha doctrina de negligencia comparativa. 31 L.P.R.A. sec. 5141. Dicho Art. 1802 lee como sigue:

"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización."

Basándose en la citada Ley Jones de 1920 el demandante mediante moción solicitó juicio por jurado en el Tribunal Superior. La moción fue declarada sin lugar. En lo pertinente, la Ley Jones (46 U.S.C. sec. 688) dispone lo siguiente:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . . ."

■ Con anterioridad a la enmienda de 1920 las reclamaciones que los marinos mercantes podían hacer por sustento y cura y por daños basadas en innavegabilidad eran acciones en almirantazgo y se ventilaban ante un juez sin jurado. Mediante la Ley Jones de 1920 el Congreso quiso igualar los marinos mercantes a los demás litigantes en daños en Estados Unidos. Esto es, quiso darle a los marinos mercantes el derecho a ventilar sus reclamaciones por daños ante jurado, como lo han hecho tradicionalmente los demás litigantes en los Estados Unidos. La Ley Jones de 1920 pues, surte un efecto igualador en los Estados Unidos pero su aplicación en Puerto Rico tendría un efecto diametralmente contrario. Esto es, en Puerto Rico, en donde ningún litigante en daños y perjuicios tiene derecho a juicio por jurado, darle ese derecho a los marinos sería, no igualarlos a los demás litigantes, sino concederles un privilegio sobre los demás. Esto obraría como un discrimen contra la masa de litigantes que no son marinos mercantes.

■ En Puerto Rico la litigación por daños y perjuicios, incluyendo lo que en Estados Unidos se denomina negligencia, se litiga y siempre se ha litigado ante un juez sin jurado. Esto ha sido así desde que en Puerto Rico operan Tribunales de justicia, luego de haber sido esta isla descubierta y colonizada por España. Que sepamos no ha habido aquí nunca ninguna protesta contra este sistema de litigación civil sin

jurado ni han habido peticiones para que el mismo se cambie. Puerto Rico es una jurisdicción de derecho civil y aquí nunca ha regido el *"common law." Vda. de Fornaris* v. *Amer. Surety Co. of N.Y.*, 93 D.P.R. 29, 47 y autoridades allí citadas. La idea de un jurado para casos civiles es completamente extraña al sistema de jurisprudencia que opera y siempre ha operado en Puerto Rico.

La Constitución de Puerto Rico garantiza el derecho a juicio por jurado en los procesos criminales por delito grave, Art. II, Sec. 11; L.P.R.A., Vol. 1 (ed. 1965), pág. 235, pero ni nuestra Constitución ni las leyes de Puerto Rico proveen para juicio por jurado en la litigación civil. Los pleitos de naturaleza civil se ven y se deciden en Puerto Rico por Tribunal de derecho. Ley de la Judicatura de Puerto Rico, Ley Núm. 11 de 24 de julio del 1952, 4 L.P.R.A. secs. 121 y 181; Regla 43.1 de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. II, (L.P.R.A. Vol. 9, ed. 1969, pág. 215). Véanse Clark & Rogers, *"The New Judiciary Act of Puerto Rico: A Definite Court Reorganization,"* 61 Yale L.J. 1147 (1952); Snyder, *"New Puerto Rico Judicial System,"* 36 J. Am. Jud. Soc'y. (1953).

▮ Conviene aclarar que desde el punto de vista del derecho de los Estados Unidos la solicitud del peticionario de juicio por jurado en este caso descansa solamente en bases estatutarias y no en fundamentos constitucionales. En los Estados Unidos, ni en la época de las colonias, ni bajo la Constitución era conocido el juicio por jurado en casos civiles de jurisdicción marítima. Ya en *Waring* v. *Clarke*, 5 Howard 441 (1847); 12 L.Ed. 226, 235, se razonó que lo que la séptima enmienda garantiza es que en los litigios en derecho común se "conservará" el derecho a juicio por jurado y que dicha enmienda no es aplicable a los casos en almirantazgo. No habiendo existido juicio por jurado en almirantazgo nada había que conservar en relación con juicio por jurado en dicho derecho marítimo.

Se ha resuelto que los tribunales estatales tienen juris-dicción concurrente con los tribunales federales para entender en casos bajo la Ley Jones. *Engel* v. *Davenport*, 70 L.Ed. 813 (1926); *Panamá Railroad Co.* v. *Vázquez*, 70 L.Ed. 1085 (1926); *Messel* v. *Foundation Co.*, 71 L.Ed. 1135. (1927); *Canet* v. *Moore McCormack Co.*, 317 U.S. 239 (1942); *Romero* v. *International Term. Co.*, 358 U.S. 354 (1959).

Estamos conscientes de que en cuanto a la judicatura federal y en cuanto a los estados federados concierne, el Tribunal Supremo de los Estados Unidos ha resuelto que el derecho a juicio por jurado es parte del remedio que conceden la Ley Jones y la Federal Employers' Liability Act. *Jacob* v. *New York*, 315 U.S. 752 (1942); *Bailey* v. *Central Vermont Ry.*, 319 U.S. 350 (1943); *Blair* v. *B.O.R. Co.*, 323 U.S. 600 (1945); *Schulz* v. *Pennsylvania R. Co.*, 350 U.S. 523; *A & G Stevedores* v. *Ellerman Lines*, 369 U.S. 355.

En *Dice* v. *Akron*, 342 U.S. 359 (1952), un caso bajo la Federal Employers' Liability Act, que provenía de los tribunales estatales de Ohio, se rechazó el argumento del demandado en el sentido de que si un estado puede proveer para un jurado no unánime, *Minneapolis & St. Louis R. Co.* v. *Bombolis*, 241 U.S. 211, también puede proveer para que un aspecto de la contienda sea retirado del jurado y decidido por el juez. Al contestar el mencionado argumento basado en el caso de *Bombolis* el tribunal, en *Dice* v. *Akron*, se expresó como sigue, a la pág. 363:

"El caso de *Bombolis* sería más apropiado si Ohio hubiese abolido el juicio por jurado en todos los casos de negligencia, incluyendo los que surgen bajo la ley federal. Pero Ohio no ha hecho eso. Ohio ha provisto para juicios por jurado en los casos que surgen bajo la ley federal pero a la vez trata de excluir una parte de la contienda para que sea decidida por el juez sin el jurado."

En *Fitzgerald* v. *U.S. Lines*, 374 U.S. 16 (1963), un caso bajo la Ley Jones, presentado en un tribunal de distrito fede-

ral, el demandante lesionado basó su demanda en negligencia y también en la condición innavegable del barco. Además de reclamar por los daños personales reclamó por atención médica, por mantenimiento y cura y por salarios. Solicitó juicio por jurado para todas sus causas de acción. El tribunal le concedió juicio por jurado en la causa de acción bajo la Ley Jones y en la causa de acción basada en la innavegabilidad del barco pero determinó que las causas de acción por mantenimiento y cura (tradicionalmente causas en almirantazgo) debían ser decididas por el juez sin jurado. El Tribunal Supremo de los Estados Unidos revocó y determinó que cuando la causa de acción por mantenimiento y cura se reclama conjuntamente con causas de acción bajo la Ley Jones todas deben ser sometidas al jurado si surgen de los mismos hechos. Expresó el Tribunal que aun cuando las causas de acción basadas en negligencia, en innavegabilidad y en mantenimiento y cura, tienen distintos orígenes, deben someterse todas al jurado cuando surgen de unos mismos hechos. Argumentó el Tribunal que hacer lo contrario y fraccionar el pleito crea complicaciones y confusiones innecesarias. 374 U.S. a las págs. 18 y 19.

En *Fitzgerald*, igual que en *Dice* v. *Akron*, existía el juicio por jurado pero se trató de fraccionar el pleito y el Tribunal Supremo sostuvo que no podía hacerse. En ninguno de estos casos se trataba de una situación como la nuestra en que no existe en nuestra jurisdicción el juicio por jurado para decidir casos civiles. Es significativo que en *Dice* v. *Akron*, el tribunal dijo que el caso de *Bombolis* hubiese sido más apropiado o más persuasivo si el estado hubiese abolido el juicio por jurado en *todos* los casos de negligencia. Se ve que el espíritu de la Ley Jones y de las opiniones judiciales que la interpretan es en el sentido de que en aquellas jurisdicciones *en que se provee* para juicio por jurado para casos civiles (1) las acciones bajo la Ley Jones deben verse ante jurado y (2) que cuando de los mismos hechos surgen tam-

bién acciones que tradicionalmente eran de almirantazgo éstas también deben ser decididas por el jurado, pues el pleito no debe fraccionarse.

Discutiendo esta cuestión el Profesor Moore, luego de explicar que el marino puede demandar en los tribunales federales en derecho común o en almirantazgo, teniendo derecho a juicio por jurado en el primer caso pero no en el segundo, expresa que el marino también puede llevar su caso bajo la Ley Jones en los tribunales estatales. En este último supuesto, explica Moore, "el marino puede presentar todas sus causas de acción en el tribunal estatal y tendrá allí juicio por jurado en relación con todas las causas de acción, *suponiendo, desde luego, que en el Estado exista juicio por jurado en esta clase de acciones.*" 5 Moore's *Federal Practice*, sec. 38.35 [4], 2da. ed. (1969), p. 282. (Énfasis nuestro.)

Es significativo también que al insistir en la celebración ante jurado del juicio *civil* el Tribunal Supremo de los Estados Unidos ha señalado repetidas veces que el juicio por jurado en casos civiles es una institución fundamental en el ordenamiento jurídico *federal. Jacob* v. *New York City,* 315 U.S. 752 (Ley Jones); *Bailey* v. *Central Vermont Ry.,* 319 U.S. 350, 354 (F.E.L.A.); *Dice* v. *Akron,* 342 U.S. 359, 363 (F.E.L.A.).(2)

De lo anterior puede verse que es claro que las jurisdicciones en las cuales existe el juicio por jurado para casos civiles no pueden negarle a los que demandan bajo la Ley Jones el juicio por jurado. También está decidido que en esas jurisdicciones en que existe jurado para casos civiles los pleitos no pueden fraccionarse para verse parte ante jurado y parte ante el juez por razón de que unas causas de acción sean tradicionalmente causas en almirantazgo y otras se

---

(2) "The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence." *Jacob* v. *New York City,* 315 U.S. 752.

basen en la Ley Jones, si las distintas causas de acción surgen de los mismos hechos.

Desde luego, no nos toca a nosotros resolver cuál sería la situación de un caso bajo la Ley Jones que se tramitase en un tribunal de un estado federado en cuyo estado no existiese o se hubiese abolido el derecho a juicio por jurado en los casos civiles. Nuestro caso y nuestra decisión se limitan exclusivamente a la situación particular de Puerto Rico.

El Congreso, el Tribunal Supremo, la Presidencia y los autores han reconocido la relación especial que desde el 1952, en virtud del pacto y de la Constitución de Puerto Rico, existe entre este país y los Estados Unidos. Los ejemplos de esto son numerosos pero nos limitaremos a mencionar sólo algunos que son representativos y eminentes:

1. Ley Pública 600 del 81er. Congreso, aprobada en 3 de julio de 1950, 64 Stat. 319, mediante la cual el Congreso con la aprobación del Presidente expresó que "reconociendo ampliamente el principio del gobierno por consentimiento de los gobernados, se aprueba esta Ley, con el carácter de un convenio, de manera, que el pueblo de Puerto Rico pueda organizar un gobierno basado en una constitución adoptada por él mismo."

2. Ley Pública 447 del 82do. Congreso, aprobada en 3 de julio de 1952, 66 Stat. 327, en la cual se expresa que la Ley 600 "fue adoptada por el Congreso como un convenio con el pueblo de Puerto Rico."

3. (a) Memorando del Gobierno de los Estados Unidos, (b) carta del Representante de los Estados Unidos en las Naciones Unidas al Secretario General de dicho cuerpo de 21 de marzo de 1953, (c) carta del Gobernador de Puerto Rico al Presidente de 17 de enero de 1953 y otros documentos relacionados, 28 Dept. State Bull. (E.U.) 584.

4. Memorando del Presidente de los Estados Unidos sobre el Estado Libre Asociado de Puerto Rico dirigido a los jefes

de los departamentos ejecutivos del Gobierno de los Estados Unidos, 26 Federal Register 6695 (1961), en el cual se dice lo siguiente: "Debido a la importancia y significado de Puerto Rico en las relaciones de los Estados Unidos con la América Latina y con otras naciones, es esencial que los departamentos ejecutivos estén plenamente conscientes de la posición especial del Estado Libre Asociado y que las decisiones, los actos, los informes y toda otra actividad que afecte al Estado Libre Asociado debe ser consistente con su estructura y sus principios básicos."

5. Reconocimiento judicial de "la relación especial (*unique*) que existe entre el Congreso y el Estado Libre Asociado de Puerto Rico." *Katzenbach* v. *Morgan*, 384 U.S. 641, 658. En *Granville-Smith* v. *Granville-Smith*, 349 U.S. 1, 6, el Tribunal distinguió la situación actual de Puerto Rico de la anterior. Allí se refirió a la situación anterior al 1952 como "pre-Commonwealth Puerto Rico."

6. Ejemplos de aplicación local a Puerto Rico de leyes federales previo el consentimiento expreso de la Asamblea Legislativa de Puerto Rico: (a) Ley Pública Núm. 859 del 85to. Congreso y la Ley Núm. 3 de 6 de mayo de 1959, Leyes de Puerto Rico, Tercera Sesión Ordinaria, 1959, pág. 15, mediante la cual la Asamblea Legislativa de Puerto Rico dio su consentimiento para la aplicación en Puerto Rico de la Sec. 5314 del Código Federal de Rentas Internas de 1954, según enmendado por la Ley Pública 859 del Congreso; (b) la Resolución Conjunta Núm. 97 de 22 de junio de 1956 (R.C., 1956, pág. 245) dando consentimiento para la aplicación en Puerto Rico de un tributo sobre elaboración de azúcar refinada impuesto por la Ley de Azúcar de 1948, Ley Pública 545 del Congreso, de 29 de mayo de 1956; (c) Resolución Conjunta Núm. 1 de 25 de julio de 1956 de la Asamblea Legislativa de Puerto Rico (R.C., 1956, pág. 335) dando consentimiento para que las Secs. 4701 a 4707

y 4771 a 4776 del Código Federal de Rentas Internas de 1954, según enmendado, se apliquen a Puerto Rico a partir de la fecha de vigencia de la Ley Pública 728 del 84to. Congreso.

7. McGruder, *The Commonwealth Status of Puerto Rico*, 15 U. Pitt. L. Rev. 1 (1953); Friedrich, *Puerto Rico: Middel Road to Freedom* (1959); Wells, *The Modernization of Puerto Rico*, Harvard University Press (1969), págs. 220–241; Cancio, Chief Judge, U.S. Dist. Ct. for P.R., *The Power of the Congress to Enter into a Compact with the People of Puerto Rico: The Legal Status of the Compact*, 22 Rev. C. Abo. P.R. 341 (1962). Para una relación mayor de libros, documentos oficiales y artículos sobre el Estado Libre Asociado de Puerto Rico véase el Apéndice del caso *E.L.A.* v. *Márquez*, 93 D.P.R. 393, 408 (1966).

La Sec. 9 de la Ley de Relaciones Federales entre los Estados Unidos y Puerto Rico dispone que:

"Las leyes estatutarias de los Estados Unidos *que no sean localmente inaplicables*, salvo lo que en contrario se dispusiere en la presente, tendrán el mismo efecto y validez en Puerto Rico que en los Estados Unidos. . . ."([3]) (Énfasis nuestro.)

Y en lo que respecta a cuestiones marítimas en particular, el Congreso dispuso en la Sec. 8 de dicha Ley de Relaciones Federales que:

"Todas las leyes de los Estados Unidos para la protección y mejoramiento de las aguas navegables de los Estados Unidos y para la conservación de los intereses de la navegación y del comercio, serán aplicables a dicha isla y aguas y a sus islas y aguas adyacentes, *excepto en aquello en que las mismas sean localmente inaplicables;* . . . ." (Énfasis nuestro.) 48 U.S.C. Sec. 749.

---

([3]) 48 U.S.C. Sec. 734. La Ley Pública 600 del Congreso, de 3 de julio de 1950, consistente con su espíritu, derogó un número de secciones de la Ley Jones de 2 de marzo de 1917, cuya Ley Jones era la Carta Orgánica de Puerto Rico, y designó las secciones restantes como la Ley de Relaciones Federales de Puerto Rico.

■ Como antes hemos dicho, por no existir en Puerto Rico juicios por jurado en los casos civiles, por ser eso extraño a nuestra tradición jurídica civil, por no proveer nuestras leyes ni nuestras Reglas de Procedimiento para eso, y por disponer nuestra legislación para la celebración de los juicios civiles ante tribunal de derecho, sin jurado, resulta localmente inaplicable a Puerto Rico la disposición de la Ley Jones de 1920, 46 U.S.C. Sec. 688, en tanto en cuanto provee para juicio por jurado en casos civiles. Para un caso en que se declaró localmente inaplicable a Puerto Rico una ley federal, una vez establecido el Estado Libre Asociado, véase *United States* v. *Ríos*, 140 F.Supp. 376 (1959).

Como puede verse, este caso es un ejemplo del problema siempre vivo del funcionamiento y desarrollo de las dos soberanías—la estatal y la federal—que existe en todo sistema federal. Bien apreció esto desde temprano en la vida de la República John Quincy Adams cuando dijo que el sistema federal era "el gobierno más complicado sobre la faz de la tierra" (*the most complicated government on the face of the globe*).[4] Sin embargo, esa dificultad no ha impedido que el sistema federal americano funcione. Esto ha resultado así porque generalmente el árbitro mayor de dicho sistema, el Tribunal Supremo de los Estados Unidos, ha interpretado su andamiaje jurídico con imaginación y flexibilidad. A esto se le ha llamado en ocasiones *judicial statemanship*. Sin duda lo es.

Consistente con lo anterior, el Tribunal Supremo de los Estados Unidos siempre ha demostrado una juiciosa deferencia hacia los procesos gubernamentales y judiciales de Puerto Rico. Ahora, debido a los desarrollos constitucionales puertorriqueños de 1950–1952, es más válido que nunca el pronunciamiento del Tribunal Supremo de los Estados Unidos en el sentido de que:

---

[4] Adams, *The Jubilee of the Constitution*, 115 (Colman, Ed. 1839), citado en Brennan, *Some Aspects of Federalism*, 29 N.Y.U.L. Rev. 945, 946.

"Se sirve bien al desarrollo ordenado del Gobierno de Puerto Rico mediante una cuidadosa y consistente deferencia legislativa y judicial hacia los procedimientos y los tribunales de dicha isla." *Bonet* v. *Yabucoa Sugar Co.*, 306 U.S. 505, 510.

Véase en el mismo sentido *Bonet* v. *Texas Co.*, 308 U.S. 463, 470–471; *Díaz* v. *González*, 261 U.S. 102, 105–106; *Nadal* v. *May*, 233 U.S. 447.

Como bien ha expresado un autor recientemente, Puerto Rico ocupa un lugar único en el derecho americano y un tratamiento único es deseable cuando se brega con su especial situación política y cultural. Esto significa, expresó ese autor, que dicho tratamiento debe responder a la situación y a las necesidades de ese pueblo. Leibowitz, *The Applicability of Federal Law to the Commonwealth of Puerto Rico*, 37 Rev. Jur. U.P.R. 615, 674 (1968).

Por las anteriores consideraciones, *se confirmará la resolución del tribunal de instancia denegando juicio por jurado en el Tribunal Superior de Puerto Rico en este caso.* [5]

El Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Hernández Matos y Martínez Muñoz no intervinieron.

[5] En estos casos de daños y perjuicios originados en el mar, los demandantes, desde luego, pueden siempre escoger en Puerto Rico entre ver sus casos por tribunal de derecho, sin jurado, en los Tribunales del Estado Libre Asociado de Puerto Rico o con jurado en la Corte de Distrito federal en San Juan. Tienen ante sí ambos sistemas de derecho para escoger el que prefieran.